## MOULTON v. MCLEAN ET AL.

1. TREASURERS—PUBLIC FUNDS.

Private speculation with public funds by the official custodian thereof · is *contra bonos mores.*

2. SAME.

A county treasurer is not the agent of his county. He may take security for his own indemnity from a bank in which he deposits county money, but a bond so taken inures to his benefit. Such a bond is his property, and no cause of action to the county can arise thereon, unless by the default of the treasurer and his sureties.

3. SAME.

The right to follow county money into the hands of depositories by reason of its being public money only arises upon the default and insolvency of those making the official bond. When that occurs the funds, so far as they can be traced, can be recovered, and all individ-

ual securities taken by the officer are either transferred or assigned by him or by operation of law, and inure to the benefit of the county.

4. SAME—PARTIES—INDEMNIFYING BOND.

A bond taken by the county treasurer as security for county money deposited by him in a bank, running to him as treasurer, is a bond for his own safety, and not for the benefit of the county. He is the real party in interest therein within the meaning of the code, and the one in whose name an action thereon should be brought.

5. SAME—STATUTORY CONSTRUCTION—LOANING PUBLIC MONEY.

Although a general deposit of money with a bank is in a strict technical and legal sense a loan, it does not follow that that is the sense and meaning of the word as used in the statute prohibiting the use of public money by an officer for his own gain. Such a deposit of money is not, in the ordinary and popular sense, a loan of money. The words "loaning" and "loan" employed in the statute are used in their popular sense.

6. CONTRACT—CONSIDERATION.

The deposit of public money in a bank by the official custodian thereof is a legal consideration for a bond indemnifying the officer.

*Error to the District Court of Garfield County.*

IN MAY, 1893, and subsequent to that time, Moulton (plaintiff in error) was treasurer of the county of Garfield. J. T. McLean and W. J. Miller, copartners, were doing business as bankers at the town of New Castle, under the name of the Bank of New Castle. The banking firm solicited plaintiff in error to deposit in such bank a portion of the moneys in his hands and to come into his hands as treasurer with such bank. Such arrangement was made, and the following writing obligatory was executed and delivered to plaintiff in error:

"Know all men by these presents, that we, J. T. McLean and W. J. Miller as principals, and Thos. W. Leonard as sureties, all of the state of Colorado, are held and firmly bound unto G. H. Moulton, treasurer of the county of Garfield and state of Colorado, in the penal sum of ten thousand dollars, lawful money of the United States, for the payment of which, well and truly to be made, we bind ourselves, our

heirs, executors and administrators, jointly, severally, firmly, by these presents.

"Sealed with our seals, and dated this 4th day of May, A. D. 1893.

" The condition of this obligation is such that whereas, the said G. H. Moulton, treasurer of the county of Garfield, as aforesaid, has, on the day of the date hereof, as such treasurer, deposited in the Bank of New Castle, at New Castle, Colorado, the sum of $2,000 (two thousand dollars) of the funds of said Garfield county, of which said bank said McLean and Miller are the owners.

"Now, therefore, the condition of this obligation is such that if the said J. T. McLean and W. J. Miller, doing business as the Bank of New Castle as aforesaid, shall at all times well and safely keep and preserve said sum of money and each and every part thereof, or such other sums as may be hereafter deposited in said bank by said county treasurer, and shall pay same over to him or to his order from time to time as the same may be required, then the above obligation shall be void, otherwise to be and remain in full force and effect.

" J. T. McLean          (Seal).
" W. J. Miller          (Seal).
" Thos. W. Leonard     (Seal)."

In pursuance of such agreement, on May 5, 1893, plaintiff in error deposited in bank $2,000, in sums of $500 each, and took from it four certificates of deposit, of which the following is a copy :

"$500.                              No. 1183.
          " New Castle, Colo., 5 / 5, 1893.

" This certifies that Geo. H. Moulton has deposited in the Bank of New Castle five hundred dollars, payable to the order of himself, in current funds, on return of this certificate properly indorsed.

" R. H. Zimmerman, Cashier."

And on May 29th the further sum of $1,000, and took a certificate for the same of like tenor and form. Such sum of $3,000 remained in the bank, and on July 12, 1893, the bankers failed and made a general assignment.

In September, 1893, this suit was brought upon the bond to recover the money deposited. Suit was brought by plaintiff in error as obligee and payee of the bond as an individual, and not in his official capacity as treasurer for the benefit of the county. A demurrer as follows was filed to the complaint:

" 1—That said complaint does not state facts sufficient to constitute a cause of action against these defendants.

" 2—That plaintiff has no legal capacity to sue, because the instrument upon which recovery is sought to be had herein shows upon its face that it was given to G. H. Moulton, treasurer of the county of Garfield, in the state of Colorado, and this action is commenced and being prosecuted by G. H. Moulton in his individual capacity, and not as treasurer of said Garfield county.

" 3—That there is a defect of parties plaintiff in said action, because recovery herein is sought to be had by G. H. Moulton as an individual, whereas the complaint shows upon its face that the instrument upon which this suit is based is an instrument running to G. H. Moulton, treasurer of the county of Garfield, in the state of Colorado, and not to him as an individual."

Upon the hearing the demurrer was sustained. Plaintiff took leave to amend the complaint, and added the allegation : " That at all times since the giving of said bond, he has been and still is the obligee named therein, and that at the time of the bringing of this action, and for a long time prior thereto, and ever since, he has been and still is the owner of the cause of action set out in the complaint."

The same demurrer was refiled to the amended complaint, sustained by the court upon all of the three grounds designated, judgment entered for the defendants upon the plead-

ings, the action dismissed and an appeal prosecuted to this court.

Mr. C. W. DARROW and Mr. J. L. HODGES, for plaintiff in error.

Mr. A. M. STEVENSON, for defendants in error.

REED, J., delivered the opinion of the court.

The only question presented for determination is the correctness of the judgment of the court upon the demurrer.

Counsel for defendant contended: 1st, that by the form and wording of the bond upon which suit was brought, it was the bond of the county and that no action could be maintained by the plaintiff; 2d, that the transaction was a loan by the treasurer, of the county funds, to the bank, and was illegal and void under the provisions of sections 1248 to 1251, Mills' Statutes. (Session Laws, 1889, pp. 297 and 298). Evidently, one or both of these views must have been adopted by the court as the basis of the judgment.

· The county treasurer is by law made the custodian of the funds; is required to make a bond with three or more securities (Mills' Stats., sec. 885; Gen. Stats., sec. 630), conditioned "that he and his deputies shall pay according to law all moneys which shall come in his hands as treasurer, and shall render a just and true account, * * * and shall deliver the same to his successor." (Mills' Stats., sec. 886; Gen. Stats., sec. 631). For all shortcomings or irregularities he and his bondsmen are primarily responsible. Only in case of default or insolvency can he be divested of the control of the funds, and the money followed by the county into the hands of third parties.

In re House Resolutions, 12 Colo. 395, the question of the extent of and the limitations upon legislation under the constitution was brought to the attention of the supreme court, and it was said: " It is hardly possible that the framers of the

constitution intended to make the treasurer and his sureties absolutely responsible for the security of the public money, and yet authorize the legislature to lodge with some other official the control thereof. * * * The responsibility and control for safe-keeping naturally belong together." It is also said: "It is eminently proper, and, in view of section 13, article 10, of the constitution, it may be a legislative duty, to provide by statute that all interest paid by banks upon public funds deposited with them shall be placed to the credit of the state. * * * Reasonable legislative regulations, in addition to those named by the constitution, looking to the safe-keeping and management of public funds, may be a wise precaution ; and, if they regulate the control thereof without withdrawing it from the treasurer, we perceive no constitutional objection thereto."

In addition to the above, the view here taken is sustained *In re Breene*, 14 Colo. 401, where the court says: "The statute in question, together with section 13, article 10, of the constitution, above mentioned, was doubtless inspired more by considerations of public policy than the suspicion of damage to the public revenue. The treasurer's bond protects the state from pecuniary loss, and the criminal law provides a punishment for the embezzlement of public moneys. Private speculation with public funds by the official custodians thereof is emphatically *contra bonos mores.*"

In *State v. Walsen*, 17 Colo. 170 (the latest adjudication), it was said: "Absolute liability of the treasurer and his sureties for all public moneys received by him as treasurer is fixed by the state constitution. In this respect the obligation of the treasurer is different from that of an ordinary trustee. * * * No amount of care will excuse him in case of loss by theft, fire, or by insolvency of the banks selected as depositories ; he must make the loss good to the state. He can only be discharged by paying over the money when required, and the sureties upon his official bond also assume this unusual liability."

By this cursory view of the law and the liability of the

treasurer and his sureties, it at once becomes apparent that any interference with the contracts of the treasurer, and any restrictions upon him as custodian, inconsistent with his liability assumed, would be illegal and unjust.

The counsel contend that the contract was void as to the treasurer under the provisions of sections 1248 to 1251, Mills' Stats. (Session Laws, 1889, p. 297). Section 1248 certainly can have no application. It is not contended that there was any embezzlement, conversion to his own use, nor any investment, nor that any funds under his control had been made way with or secreted.

The only statute that could have been violated was that provision contained in section 1249 : " No such officer, agent or servant shall loan out, with or without interest, any money or valuable security received by him, or which may be in his possession or keeping, or care or control, by virtue of his office, agency or service, or under color or pretense thereof," etc.

Section 1250 is as follows : " If any such officer, agent or servant shall make any contract or agreement with any person or persons, bodies or body corporate, or other association, by which such officer, agent or servant is to derive any benefit or advantage, directly or indirectly, from the deposit with such person or persons, body or bodies corporate, or other association, of any moneys or valuable securities held by such officers, agents or servants, by virtue of his office, agency or employment, such contract shall, as to such officer, agent or servant, be utterly null and void ; but the person or persons, body or bodies corporate, or other association, shall be liable to the county, city, town, township or school district where funds are deposited, in an action for the recovery of all such benefits or advantages as would, by the terms of such contracts or agreements, have accrued to such officer, agent or servant ; and payment to the officer, agent or servant shall not protect the person or persons, body or bodies corporate, or other association, against an action of recovery brought

by the county, city, town, township or school district whose funds are so deposited."

Section 1251 fixes the penalty for violation.

Section 1249 and 1250 must be construed together to arrive at the intention of the legislature. An examination clearly shows such intention to have been to prevent the misapplication and use of public funds for the benefit and profit of the officer ; to strictly prohibit the use of the money by the officer for speculative purposes and for his own gain.

The sections in question are based upon and enacted for the purpose of carrying out the prohibition contained in section 13, article 10, of the state constitution, and by reference to that, the intention becomes manifest and the limits of legislation defined. It is : " The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law."

The bond upon which suit was brought runs to G. H. Moulton, *treasurer of the county of Garfield.* The condition is : " Whereas the said G. H. Moulton, treasurer of the county of Garfield, * * * has on the day of the date hereof as such treasurer deposited," etc. The certificates of deposit were made to Geo. H. Moulton in his private, not official, character.

Having in view the statutes and decisions already cited, and the absolute and unqualified liability of the treasurer and his sureties to pay over and account for all the money that came into his hands by virtue of his office, the first question is : What, if any, legal effect or significance the fact of his having the bond run to him in his official capacity had upon the transaction ? The first legal conclusion from the law and the premises is, that so long as the treasurer and his sureties remained solvent and able and willing to comply with the obligations of the official bond of the treasurer, the bond, its existence, and its form were not matters of any legal importance or significance to the county. Regardless of its form

and apparent official character, it was purely and simply a personal security, wisely taken, for the protection of his sureties and himself. He was not the agent of the county by virtue of any statute or delegated power to make the transaction, no legal warrant or authority existed, he was to safely keep, disburse and pay over to his successor.

Court and counsel seem to have fallen into the error of regarding the treasurer as the agent of the county, and that any security by him taken was taken in a fiduciary capacity, and was the property of the county by operation of law, simply from the fact that it was county money. The transaction not being one required or authorized by law, the treasurer could not hand over the security and be discharged to that extent from the liability of himself and sureties—that remained the same; consequently, there was no agency, and no title to the bond in question could pass, nor any cause of action to the county arise, unless by the default of the treasurer and sureties.

The right to follow public money into the hands of depositories by reason of its being public money only arises upon the default and insolvency of those making the official bond. When that occurs, the funds can, so far as they can be traced, be recovered, and all individual securities taken by the officer are either transferred and assigned by the officer or the operation of law, and inure to the benefit of the county.

The cases cited by counsel for defendant and relied upon in argument will be found to be those where there was defalcation of the officer; suits brought after the expiration of the term of office, to follow up and recover the money. Such was the case of *Comstock v. Gage*, 91 Ill. 328, and *City of Chicago v. Gage et al.*, 95 Ill. 593. Counsel seem to confound bonds of the character in question with official or statutory bonds, those required by law.

It is true, the bond in question runs to plaintiff in error as treasurer of Garfield county. Many reasons might be given why, through prudence or precaution, a bond, though really that of an individual, should designate him in his official

capacity. In case of his death, or any trouble arising out of his administration or an examination of accounts, it would identify such deposits as those of the county intrusted to his care by virtue of his office, and separate them from his personal estate; and although the bond runs to him in his official capacity, its character is not changed, for the reasons stated above. Not being statutory, nor in any manner contemplated by law, it is purely his own property,—an indemnifying bond, taken for his own safety, and not for the benefit of the county.

The case of *The Probate Court v. Strong*, 27 Vt. 203, relied upon by counsel, has no application. It was the case of a statutory bond. The statute required from the guardian a bond running to the probate court. The bond in question was given to Joel Allen, judge of probate, etc., " to the said judge or his successor in said office." It was claimed that the declaration was insufficient, for the reason that the bond was not a bond to the probate court. The court said : "We think the intention cannot be mistaken, and that it was designed to be an *official bond*, and not a bond to Judge Allen as an individual. The subject-matter of the bond relates to the court of probate, and to what is purely an official character. * * * This shows clearly the intention to make it *an official* bond," etc. The distinction between the two cases is obvious. In this case the intention to make it personal, and a bond of indemnity, is fully expressed, and the intention clear.

The contention of counsel and judgment of the court that the suit was wrongly brought by plaintiff cannot be sustained. By the Civil Code, section 3, it is provided : "Every action shall be prosecuted in the name of the real party in interest, except as otherwise provided in this act." No provision in the act exempts this case from its provision. This section has been frequently sustained by the courts. See *Bassett v. Inman*, 7 Colo. 270, where it is said that the assignee of the note and account " was the real party in interest within the meaning of the Code of Civil Procedure, even though the

consideration of the assignment may have been a payment to the assignor after recovery in the suit by the assignee." See, also, *Walker v. Steel*, 9 Colo. 388; *Limberg v. Higenbotham*, 11 Colo. 156; *Jackson v. Hamm*, 14 Colo. 58; *Bank v. Hummel*, 14 Colo. 275, where it is said: "'The real party in interest' is held to mean the person in whom the legal title to the claim in suit is vested." There having been no question of the solvency of the treasurer and his sureties, no default, and the treasurer being liable over for the funds deposited with defendants, and the bond having been taken by the treasurer as one of indemnity, the fact that the money was that of the county, and upon its recovery by the treasurer must have been paid over to the county, did not change the status of the parties, invest the county with the title to the bond, nor divest the treasurer. See *Bassett v. Inman, supra;* *Cummings v. Morris*, 25 N. Y. 625; *Meeker v. Cleghorn*, 44 N. Y. 349; *Caulfield v. Sanders*, 17 Cal. 569.

The court erred in holding the county to be the "real party in interest," and that the suit should have been brought in its name or to its use.

Counsel contend, and the court seems to have adopted the view, that the transaction was a loan or loans, consequently illegal under section 1249, Mills' Statutes, and that, by reason of such illegality, the security taken by the treasurer passed to the county, under section 1250, Mills' Statutes. Such construction cannot prevail. The transactions were deposits, payable upon demand, without interest. That the moneys were not payable upon checks, but only upon return of the certificates in no way alters the legal status.

Technically, all deposits made to banks are loans. The identical money is not to be returned, and the bank becomes the debtor to the amount of the deposit; but it is clear, as before stated, that it was not the intention of the legislature to prohibit the depositing of money in banks for convenience in safe-keeping. It is the using of public money by the officer for his own gain that is intended to be reached. It is the use of money by way of loans. In *Maillard v. Lawrence*,

16 How. (U. S.) 251, it was said : " The popular or received import of words furnishes the general rule of the interpretation of public laws, as well as of private and social transactions."

In construing the identical statute before us, the supreme court of the state of Illinois, in *Comstock v. Gage, supra,* said : " Admitting that a general deposit of money with a bank is in a strict technical and legal sense a loan, it does not follow that that is the sense and meaning of the word as used in the statute. Such a deposit of money is not in the ordinary and popular sense a loan of money, and we are satisfied that the words ' loaning ' and ' loan,' employed in the statute, were used in their popular sense, and not in the strict legal meaning to include a bank deposit." This authoritative construction of the statute, of which ours is a literal copy, shows that section 1249 has no application to this case. There being no violation of that section, the provisions of section 1250 can have no application, and the treasurer would not be divested of, or the county invested with, the title to the bond by operation of law, and not being possessed of it as the " real party in interest," no action could be maintained by the county or " to its use."

The bond, as one of indemnity, is in proper form. The bank made default in the payment of the money the bond was given to secure, and, by its terms, it became operative. The deposit of the money in the bank was a proper and legal consideration. (*Comstock et al. v. Gage.*) We think the allegations in the complaint show a cause of action, that it was properly brought in the name of plaintiff, and that the court erred in sustaining the demurrer.

The judgment will be reversed and the cause remanded.

*Reversed.*