(No. 20543.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* MILTON FELDSTEIN, Plaintiff in Error.

*Opinion filed February 18, 1931.*

616

Bernard J. Brown, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and James B. Searcy, (Henry T. Chace, Jr., and Edward E. Wilson, of counsel,) for the People.

Mr. Chief Justice Dunn delivered the opinion of the court:

The grand jury in the criminal court of Cook county returned an indictment in three counts against Milton Feldstein, charging him in the first count with the embezzlement of a diamond, the property of Michael Koopman, delivered and entrusted to the defendant as bailee; in the second count charging him with the embezzlement of a diamond, the property of Koopman, while an agent in the employ of Koopman, the diamond having come to the defendant's possession by virtue of such employment; in the third count with the larceny of the diamond. In each count the value of the diamond was alleged to be $500. The defendant entered a plea of not guilty, waived a trial by jury and submitted the cause to the court for trial, which resulted in a finding of guilty in manner and form as charged in the indictment, a judgment of guilty of embezzlement and a sentence to imprisonment in the penitentiary. The

defendant has sued out a writ of error and asks a reversal of the judgment on the ground that the evidence does not sustain the finding and judgment.

Michael Koopman was the only witness in the case except the policeman who testified that the defendant told him on November 29, 1929, that he had got a stone from Koopman on that day and went right over to Bernstein Bros. and pawned it. Koopman testified that he was in the wholesale jewelry and diamond business and had been for eighteen years. His place of business was 108 North State street. He had known the defendant probably fifteen years. He did business only with retail jewelers, jobbers and general trade. On November 29, 1929, he had a conversation in his office with the defendant. The defendant asked him if he had a diamond around two carats, but Koopman, after looking over the stock, did not find one of that size. The largest he had was one and forty hundredths, which he showed to the defendant and asked him if he could use it. The defendant said he wanted the diamond for a star and said that he could use it and asked if Koopman would let him have it. Koopman said he would, provided "you give me a fast report." The defendant said he would report the next day, and Koopman made out a memorandum and gave the diamond to the defendant, keeping the original memorandum, which was introduced in evidence as exhibit 1. The diamond was wrapped in a paper, which was also introduced in evidence as exhibit 2. The value of the diamond was $495. Nothing else was said between the defendant and Koopman on that occasion. The next conversation between them was about three or four days later, in the office of the defendant. Koopman asked him for a report on the diamond, and he told Koopman, "You know what happened; everything will be all right," and that was all. Koopman never had any other conversation after that with the defendant. On cross-examination Koopman said that he had known the defendant's father

probably twenty-five years. The father conducted the business of L. Feldstein, a jewelry manufacturing business, and Koopman had done some business with him. He had known the defendant since he was a child and knew his brother, Lester. He did not know, after the father died, whether the business was carried on in the name of L. Feldstein Sons, but he presumed it was. The first time he did business with the defendant was on November 1, 1929, when he delivered to him a diamond for $824 on a memorandum which had a notation, "Net cash no discount." To the question, "When is the cash due under the terms of this memorandum?" his answer was, "The cash is due when the stone is sold and the money is in his possession." He was asked, "When he reports to you that he had sold the stone, then that amount is due, net cash? Is that right?" and answered: "Right. On November 15 I received $350 on account of that item. On November 20, 1929, I received a check from Leo Feldstein & Son for $300 on the same item. On November 21, 1929, received a check from Leo Feldstein & Son for $175 in payment of the balance on that account. That paid off that item. On November 29 the defendant told me he wanted a diamond about two carats. I told him I did not have any of that size. I did not ask him what he wanted the diamond for." Koopman continued that he never asked a merchant what he wanted a diamond for—it was none of his business. He did not care in this case what the defendant wanted the diamond for. He showed him this diamond and he thought he could use it. He made out the memorandum and delivered the diamond to Feldstein. He does not deliver diamonds like that to everybody. The only person he delivers diamonds to like that is a person he knows and trusts. His general business with jewelers is in the same way. He delivers diamonds on memorandum as in this case, and when the jeweler sells the diamond he reports that he has sold it. To some he sends a bill and to some he doesn't. When he came

to the defendant's office he asked him for a report on the diamond, "How about my stone?" The defendant said, "You know what happened," and Koopman said he did. Koopman said, "How about my diamond?" and Feldstein said he had pawned it. Koopman asked him, "Well, what about it?" and the defendant said, "It will all be taken care of," and Koopman said, "All right," and walked out. He had not talked with the defendant since, though he saw him on the street several times and said "Hello." At the conclusion of the abstract of Koopman's evidence on direct examination it is stated the witness disclosed that Lester Feldstein, defendant's brother, had committed suicide.

The People's exhibit 1 is in the following words and figures:

"CONSIGNED ON MEMORANDUM      No. 5319
From

KOOPMAN & BYRNE
Diamond Cutters and Importers—Manufacturers
of Platinum Jewelry

SUITE 1236 STEWART BUILDING
108 North State Street

M      *Leo Feldstein Sons*      Chicago, *Nov 29 1929*

N. B. The goods described and valued below are sent to you for examination, remaining the property of KOOPMAN & BYRNE and subject to the order of Koopman & Byrne and shall be returned to them on demand.

*275      1 dia 1.40 @ 350.00 per ct.*
*net cash no discount*"

The matter italicized was in the handwriting of Michael Koopman in the original. The People's exhibit 2 was as follows:

"*400—275*
*V. V. S.*
*1 Dia 1.40 @ 350.00 per ct.*"

The original of the above was in Koopman's handwriting.

Embezzlement and larceny are both offenses against the owner of property, and the name of the person injured by

the larceny must be stated, if known. The ownership of the property stolen or embezzled is an essential element of the crime and must be proved as averred in the indictment. Proof of separate or individual ownership does not sustain an allegation of corporate ownership or of partnership ownership, and proof of corporate or partnership ownership does not support an allegation of individual ownership. (*People* v. *Pernalsky,* 334 Ill. 38; *People* v. *DePaepe,* 281 id. 318; *People* v. *Struble,* 275 id. 162; *People* v. *Csontos,* 275 id. 402; *People* v. *Krittenbrink,* 269 id. 244; *People* v. *Fryer,* 266 id. 216; *People* v. *Brander,* 244 id. 26; *Aldrich* v. *People,* 225 id. 610.) The indictment in each of the three counts charged the diamond to be the property of Michael Koopman, and it was necessary to a conviction that this allegation should be proved beyond a reasonable doubt. Nobody testified directly that the diamond was the property of Koopman. He was a witness, but he did not testify directly that he was the owner of the diamond. His testimony is not inconsistent with the ownership of the diamond by some other person. It might, in the absence of any contradictory evidence, be sufficient to raise the presumption that he was the owner of the diamond, but the documentary evidence is inconsistent with any such conclusion and certainly is sufficient to raise a reasonable doubt of his individual ownership of the property. Koopman testified that he had been in the wholesale jewelry and diamond business for eighteen years and that his place of business was 108 North State street, that he did business only with retail jewelers, jobbers and general trade, and that the defendant came into his office and had a conversation with him in regard to the diamond. Koopman showed him the diamond and asked him if he could use it, and he said he could and asked if Koopman would let him have it. Koopman said he would provided the defendant gave him a fast report, and the defendant said he would report the next

day, and thereupon Koopman made out a memorandum and gave the diamond to the defendant. This original memorandum which Koopman made out and kept was received in evidence. It was under the heading, "From Koopman & Byrne," the address, 108 North State street, the date, Chicago, November 29, 1929. It was addressed to Leo Feldstein Sons, immediately below which appeared the notice that the goods were sent for examination, remaining the property of Koopman & Byrne. This memorandum, addressed by Koopman himself to the defendant and introduced in evidence by the prosecution, was certainly sufficient at least to raise a reasonable doubt as to Koopman's sole ownership of the diamond as alleged in the indictment. Koopman's language in testifying might be that of an owner. It is equally consistent with that of a salesman, an employee of a partnership or a corporation, and the memorandum of the transaction which he made at the time is entirely inconsistent with his individual ownership.

The People argue that the objection of a variance was not made at the trial and therefore cannot be availed of in this court. This question was considered in *People* v. *Smith,* 258 Ill. 502, where there was a variance in the name of the person who was the victim of the crime, but it was said in reversing the judgment: "It is suggested that the question of variance was not raised on the trial, but this is immaterial. The indictment charged a crime against a certain person, but the proof failed to show it and did show a crime, if any, against another person." To the same effect are *Davis* v. *People,* 19 Ill. 74, and *Penrod* v. *People,* 89 id. 150.

The judgment is reversed.                     *Judgment reversed.*