PEOPLE OF THE STATE OF COLORADO *v.* EMIL M. SCHNEIDER
AND WALTER B. TRUE.

No. 17,603.

PEOPLE OF THE STATE OF COLORADO *v.* WALTER B. TRUE.

No. 17,604.

PEOPLE OF THE STATE OF COLORADO *v.* WALTER B. TRUE.
(292 P. [2d] 982)

Decided January 30, 1956.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. GEORGE O. PRIEST, District Attorney, Mr. RICHARD N. GRAHAM, Assistant, for plaintiff in error.

Mr. S. T. ANDERSON, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE trial court, on motion of defendants in error, quashed a series of indictments returned against them by a grand jury. From the ruling of the trial court in three of these cases the People are here by writ of error, seeking reversal. For convenience of all parties, the three cases have been consolidated. The defendants, at the times referred to, were County Commissioners of Jefferson County, Colorado.

On April 21, 1954, the District Attorney of the first judicial district filed in the district court a petition for a

Grand Jury and on April 27, 1954, the court entered an order that a grand jury be impaneled to investigate charges set forth in the petition presented by the District Attorney wherein it was alleged that "charges and accusations have been made to the District Attorney of the first judicial district during a period of the last two months by citizens and residents of Jefferson County that there may have been violations of the criminal statutes of the state of Colorado by the Board of County Commissioners as a body politic and corporate and by county employees and by people doing business with them; * * *" According to the record the grand jury was impaneled and proceeded to investigate these charges.

On June 14, 1954, under a subpoena duly issued, the defendant Emil M. Schneider, one of the county commissioners and one whom the petition of the district attorney sought to investigate, was summoned to appear before said grand jury and to give testimony before that body. Walter B. True, another defendant, was likewise subpoenaed to appear on the same date to give testimony before the grand jury. Later, and on August 2, 1954, defendant Emil M. Schneider was by subpoena duces tecum directed to appear before the grand jury and produce certain records of the Board of County Commissioners of Jefferson County, Colorado, and was subpoenaed to again appear on July 29, 1954 and August 9, 1954. Defendants Schneider and True appeared as required and gave their testimony. On October 2, 1954, the grand jury returned some twenty-two indictments involving four persons of whom defendants in error were two. Motions to quash the indictments were filed, and on January 11, 1955, the indictments were quashed.

Counsel for Schneider and True present six reasons why the motions were properly sustained. Of these six points we need consider only two. 1. The indictments did not state a crime under the laws of Colorado. 2. These defendants individually and collectively, were the sub-

ject matter of the investigation by the grand jury, and notwithstanding this fact they and each of them were compelled by subpoena to appear before said grand jury and testify and give "testimony incriminating themselves without first being fully advised of their constitutional rights against self-incrimination, all contrary to the Constitution and Statutes of the state of Colorado and the Constitution of the United States."

In case No. 17,602 the indictment charged that defendants Schneider and True, being County Commissioners, did wilfully, illegally, feloniously and unlawfully loan ten thousand dollars of the monies of Jefferson County, Colorado, to the Karl F. Hehl Engineering Company; * * *"

In cases numbered 17,603 and 17,604 the defendant True was charged in the first count with malfeasance in office in that between certain dates he had a private interest in land which was later subdivided as Lakewood Manor and Helding Subdivision "which private interest was directly opposed to and conflicted with his duties as county commissioner and as a county officer."

In the second count of indictments in cases 17,603 and 17,604 defendant True was charged with "violation of his oath of office" for the same reasons as set forth in the first count of said indictments.

It is admitted that this indictment is predicated on C.R.S. '53, 40-19-4, which reads:

"No such officer, agent or servant shall loan out, with or without interest, any money or valuable security received by him, or which may be in his possession or keeping, or care or control, by virtue of his office, agency or service, or under color or pretense thereof, and any such officer, agent or servant, so loaning such money or valuable security, on conviction thereof, shall be punished * * *."

At the time this statute was adopted in 1889 the following section, now C.R.S. '53, 40-19-5 was also adopted as a part of the enactment:

"If any such officer, agent or servant shall make any contract or agreement with any person or body corporate, or other association, by which such officer, * * * is to derive any benefit or advantage, directly or indirectly, from the deposit with such person or body corporate, or other association * * * such contract shall, as to such officer, agent or servant be utterly null and void. * * *'"

These sections of our law were considered in *Moulton v. McLean,* 5 Colo. App. 454, 39 Pac. 78, where it was said: "Section 1249 and 1250 [now C.R.S. '53, 40-19-4 and 5] must be construed together to arrive at the intention of the Legislature. An examination clearly shows such intention to have been to prevent misapplication and use of public funds for the benefit and profit of the officer; to strictly prohibit the use of money by officers for speculative purposes and for his own gain.

"The sections in question are based upon and enacted for the purpose of carrying out the prohibition contained in Section 13, Article 10 of the state constitution, and by reference to that, the intention becomes manifest and the limits of legislation defined. It is: 'the making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony and shall be punished as provided by law."

In the Moulton case, supra, cited with approval in *Davis v. Dunlevy,* 11 Colo. App. 344, 53 Pac. 250, it was said: "It is the using of public money for his own gain that is intended to be reached."

In the instant case there is no allegation in the indictment in case No. 17,602 indicating that what the defendants Schneider and True did was corrupt or with the expectation of gain to them, or either of them. We must, therefore, conclude that the indictment in case No. 17,602 did not charge a crime under the laws of this state.

In cases numbered 17,603, and 17,604 the defendant

True is charged in the first count with malfeasance in office in that between certain dates he had a private interest in real estate which was later subdivided, which private interest was directly opposed to and conflicted with his duties as a county commissioner.

Malfeasance consists of the doing of an act which is wholly wrongful and unlawful; it involves an act which the officer has no authority to do. Malfeasance in office cannot be charged except for breach of a positive statutory duty or for the performance of a discretionary act with an improper or corrupt motive.

The pertinent statute is C.R.S. '53, 40-7-47, and specifically provides that the person charged must "Willfully or corruptly" be guilty "of oppression, malfeasance or partiality in the discharge of his official duties." Hence, to state a charge under this section it must be alleged that the offense was committed willfully and corruptly.

Nothing in this count indicates any affirmative act of defendant True which constituted the alleged malfeasance. Mere ownership of land by a county commissioner, which land was later subdivided, would not constitute malfeasance. There must be some direct allegation of facts which constitute malfeasance. To charge malfeasance without more is to state a conclusion which does not afford the defendant an opportunity to know the nature of or to meet the charge against him. Malfeasance is the doing of an intentional and corrupt act by an official. It is readily distinguished from misfeasance or nonfeasance.

In the second count of the indictments in cases Nos. 17,603 and 17,604 defendant True is charged with violation of his oath of office for the same reasons set forth in the first count of the indictments. Unquestionably defendant True took the customary oath when he assumed his duties as county commissioner. This oath is provided by statute, C.R.S. '53, 35-3-1. It obligates the officer to support the Federal and State Constitutions and to perform the duties of his office to the best of his ability.

When we examine this oath, and in the light thereof, the second count of these indictments, we find nothing which suggests defendant True violated his oath of office.

In the instant cases the defendants did not voluntarily appear before the grand jury. Under the subpoenas served on them they were compelled to attend. At no time were they or either of them advised concerning their privilege against self-incrimination under Article II, Section 18 of our Constitution. There is nothing in these records indicating that the defendants, or either of them, waived their privilege. When the motions to quash came on for hearing the defendants introduced evidence concerning these matters and what they were required to do before the grand jury, all in accordance with our holding in *People v. Clifford,* 105 Colo. 316, 98 P. (2d) 272, where it was said: "* * * the courts generally are in accord with the proposition that upon the constitutional ground suggested by the motion as an exception to the orthodox rule, the defendant may challenge the validity of an indictment or information ad limine." See, also, *People v. District Court,* 29 Colo. 83, 66 Pac. 1068.

Courts have been and ever should be zealous to preserve the constitutional guarantees of this provision against self-incrimination. It should be respected rationally, not blindly worshiped, and each must be considered on its merits. In *State v. Faulkner,* 175 Mo. 546 at p. 611, 75 S.W. 116, it was said: "It is intolerable that one whose conduct is being investigated for the purpose of fixing on him a criminal charge, should, in view of our constitutional mandate, be summoned to testify against himself and furnish evidence upon which he may be indicted. It is a plain violation both of the letter and spirit of our organic law."

Courts have a duty to quash an indictment based upon testimony which violates defendant's constitutional guarantee against self-incrimination.

Because the indictments under review did not state a crime or crimes under our law, and because the defendants were not advised of their constitutional privilege against self-incrimination, the judgment of the trial court must be, and it is affirmed.