COLORADO COURT OF APPEALS                                    **2017COA65**

Court of Appeals No. 15CA1394
Lake County District Court No. 14CR32
Honorable D. Wayne Patton, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

William Steven Berry,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE J. JONES
Dailey and Berger, JJ., concur

Announced May 18, 2017

Cynthia H. Coffman, Attorney General, Jacob R. Lofgren, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Elkus Sisson & Rosenstein, P.C., Donald C. Sisson, Reid J. Elkus, Denver,
Colorado, for Petitioner-Appellant

¶ 1     A jury found William Steven Berry guilty of embezzlement of public property and first degree official misconduct. He appeals, contending that (1) there was insufficient evidence to support the convictions; (2) the district court erred in defining for the jury "public property" as used in the embezzlement statute; and (3) the embezzlement conviction and felony theft acquittal were inconsistent, requiring that the embezzlement conviction be vacated.

¶ 2     We affirm Berry's conviction for first degree official misconduct, but, because we conclude that there was insufficient evidence to prove the embezzlement of public property charge, we vacate that conviction.

## I. Relevant Facts and Procedural History

¶ 3     Berry was a sheriff's deputy when he and two other deputies responded to a domestic violence call involving a husband and his wife. The wife told the officers that her husband owned four guns and she wanted them removed from her home. The officers took the guns and put them in the Lake County Sheriff's evidence locker, where the guns remained while the domestic violence charges against the husband were pending.

1

¶ 4     After those charges were resolved, the district attorney authorized the sheriff to either destroy the guns or return them to their rightful owner.  Because the owner of the guns (the husband) had been deported from the United States, the sheriff could not return them to him (even if he were otherwise legally entitled to them), so the sheriff planned to destroy them.  However, before the guns were destroyed, Berry supposedly bought the guns from the wife.

¶ 5     Berry saw the wife while he was on duty, in full uniform, and driving his patrol car.  He followed her in his patrol car to a nearby gas station and approached her to discuss buying the guns.  When she questioned the legality of such a sale, Berry said, "of course [it is legal].  I am a representative of the law.  If I come to you with this offer, it is because I can do it, because it is legal."  The wife agreed to sell the guns, including a rare and valuable pistol, to Berry, for $500.

¶ 6     After obtaining the guns, Berry gave one of them to the deputy in charge of the evidence locker who had released the guns, and agreed to sell the pistol to an out-of-state buyer.

¶ 7    Both Berry and the wife agreed that Berry paid the wife $500 for the guns, but the evidence regarding how or from whom Berry obtained possession of the guns was inconsistent. Berry argued that the wife signed a sheriff's department release form and then sold the guns to him a week later. But the wife testified that she never signed the release form, denied that she had ever gone to the sheriff's office to pick up the guns, and testified that she never saw the guns after she asked the officers to remove them from her home.

¶ 8    As a result of these events, the People charged Berry with embezzlement of public property, felony theft, taking possession of a firearm before completion of a firearms transfer background check, and first degree official misconduct. The district court instructed the jury, over defense counsel's objection, that "property is something owned or possessed." The jury acquitted defendant of felony theft and the background check charge, but found him guilty of embezzlement of public property and first degree official misconduct.

## II. The Evidence Was Insufficient to Support the Embezzlement Conviction

¶ 9     Berry argues that the evidence admitted at trial was, for two reasons, insufficient to support a guilty verdict on the embezzlement charge. First, he argues that the statute under which he was charged — section 18-8-407, C.R.S. 2016 — requires proof that the property he converted — the four guns — was owned, and not merely possessed, by Lake County, and that there was no evidence that Lake County owned the guns. Second, he argues that there was no evidence that he converted the guns: he had no authorization to remove them from the Sheriff's Office evidence room, and it was undisputed that another deputy actually removed them from the evidence room. We agree with Berry's first argument, and therefore do not reach his second.

### A. Standard of Review

¶ 10     Berry's first argument requires us to determine two things. Initially, we must determine the meaning of "public property" in section 18-8-407(1). That, of course, is an issue of law that we decide de novo. *Marsh v. People*, 2017 CO 10M, ¶ 19. If we determine that "public property" in section 18-8-407(1) is limited to

4

property that is publicly owned, we must then determine whether the evidence was sufficient to establish that element.[1] That too is an issue that we decide de novo. *Id.*

B. "Public Property" as Used in Section 18-8-407(1) Is Limited to Property Owned by the State or a Political Subdivision Thereof

¶ 11    Section 18-8-407(1) provides as follows:

> Every public servant who lawfully or unlawfully comes into possession of any public moneys or public property of whatever description, being the property of the state or of any political subdivision of the state, and who knowingly converts any of such public moneys or property to his own use or to any use other than the public use authorized by law is guilty of embezzlement of public property. Every person convicted under the provisions of this section shall be forever thereafter ineligible and disqualified from being a member of the general assembly of this state or from holding any office of trust or profit in this state.

¶ 12    Because no statutory provision defines the term "public property" as used in section 18-8-407(1), we must determine the General Assembly's intent in using the term by employing well-established maxims of statutory construction.

---

[1] If we determine that "public property" includes property merely possessed by the state, we don't need to decide whether the evidence was insufficient to show that Lake County possessed the guns because Berry doesn't argue that it isn't.

¶ 13     We begin by attributing to the words and phrases used in the statute their plain and ordinary meanings. *People v. Perez*, 238 P.3d 665, 669 (Colo. 2010). And we consider the words or phrases at issue in context — both in the context of the statute of which the words or phrases are a part and in the context of any comprehensive statutory scheme of which the statute is a part. *People v. Hill*, 228 P.3d 171, 173-74 (Colo. App. 2009); *see Krol v. CF & I Steel*, 2013 COA 32, ¶ 15. By applying these principles, we may discover more or less direct clues to the meaning of the pertinent words or phrases, while harmonizing that meaning with the remainder of the related statutory provisions. *See Doubleday v. People*, 2016 CO 3, ¶ 20 (court must "read the scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts"). And if, after applying these principles, we determine that the relevant words or phrases are unambiguous, we enforce them as written, and we won't resort to other rules of statutory construction. *People v. Zapotocky*, 869 P.2d 1234, 1238 (Colo. 1994); *People v. Shores*, 2016 COA 129, ¶ 16.

¶ 14     But sometimes applying these principles to statutory language fails to yield a clear meaning; the language remains susceptible of

more than one reasonable interpretation. *See People v. Diaz*, 2015 CO 28, ¶ 13 ("[I]f the statutory language is susceptible of more than one reasonable interpretation, it is ambiguous . . . ."). When that is the case, we may, indeed must, employ other rules of statutory interpretation. *Id.*; *People v. Jones*, 2015 CO 20, ¶ 10. Those rules include rules adopted by the General Assembly, *see, e.g.*, § 2-4-203, C.R.S. 2016, and those created by the courts, *see Jones*, ¶ 10. Which of these rules sheds light obviously varies from case to case.

¶ 15     So, does the term "public property" have a plain meaning? Considered in isolation, it doesn't. Or at least its meaning is not sufficiently plain to resolve the issue before us.[2] This is because, in ways relevant to this case, "property" can mean different things. A perusal of various dictionaries shows that "property" can mean something either owned or possessed — a definition that would support the People's position — or something owned (i.e., something

---

[2] We acknowledge that the division in *People v. Gallegos*, 260 P.3d 15, 22 (Colo. App. 2010), applied a definition of "public property" from Black's Law Dictionary in assessing the legal sufficiency of an embezzlement charge under section 18-8-407, C.R.S. 2016. That definition is "state- or community-owned property not restricted to any one individual's use or possession." Black's Law Dictionary 1254 (8th ed. 2004). But the division didn't engage in any statutory interpretation, nor did it take account of different definitions of "property" from other sources.

that someone has the exclusive right to possess, enjoy, and dispose of) — a definition that would support Berry's position. *See, e.g.,* Merriam-Webster's Collegiate Dictionary 996 (11th ed. 2004); Webster's Third New International Dictionary 1818 (2002); The American Heritage Dictionary 1405 (4th ed. 2000); Webster's Third New International Dictionary 1818 (1976); Webster's New International Dictionary 1984 (2d ed. 1940).[3]  Adding the word "public" to the term aids little in determining the meaning of "property" under the statute because that word merely indicates whose property must be converted.

¶ 16     Turning to the context of the language, we see that it gives some indication of the meaning of "public property."  Immediately following the term "public property" is the modifying or explanatory phrase "being the property of the state or any political subdivision of the state."  The phrase "property of the state" tends to indicate that property subject to the statute is property belonging to the

---

[3] Case law recognizes that dictionary definitions may be helpful in determining the meaning of undefined statutory terms.  *See, e.g., People v. Graves,* 2016 CO 15, ¶ 33; *People v. Janousek,* 871 P.2d 1189, 1196 (1994); *People v. Oliver,* 2016 COA 180M, ¶ 35.  But we're mindful of the limitations and imperfections of such sources. *See United States v. Costello,* 666 F.3d 1040, 1043-44 (7th Cir. 2012).

state.  *See United States v. Mason*, 218 U.S. 517, 521, 531 (1910) (applying federal statutes; court clerk not guilty of embezzling "public moneys" or "money or other property of the United States" because the funds received never "belong[ed] to" the United States) (citation omitted); *Fellers v. State*, 136 S.W.2d 217, 217-18 (Tex. Crim. App. 1940) (embezzlement statute prohibiting an agent from embezzling "property of" a principal or employer requires proof that the agent received property belonging to the principal).  And the concept of "belonging to" would, in turn, seem to equate to ownership.  *Cf. United States v. Klinger*, 61 F.3d 1234, 1239-40 (6th Cir. 1995) (under federal embezzlement statute, "the use of the possessive phrasing '*of* the United States' confirms that federal *ownership* of stolen property is a jurisdictional prerequisite").

¶ 17    Also, a person is culpable under section 18-8-407(1) only if he "knowingly converts any of such public moneys or property to his own use or to any use *other than the public use authorized by law.*" (Emphasis added.)  This language seems inconsistent with the notion that "public property" includes property merely possessed by the state; one would ordinarily think of property designated by law for a public use as property owned by the government.

¶ 18    Nonetheless, we are not quite persuaded that these contextual

clues give unambiguous meaning to the term "public property."  We

look then to other interpretive aids.  We find former laws on the

same subject, the objective of the statute, and common law

particularly helpful.  *See* § 2-4-203(1)(a), (d); *Martin v. People*, 27

P.3d 846, 851 (Colo. 2001).

¶ 19    Since statehood, Colorado has had a statute criminalizing

embezzlement of public property by public officials.  The earliest

such enactment applied to the embezzlement of money and tangible

items, including "property of whatever description it may be, being

the property of said state, county or corporate body."  G.L. 1877,

§ 658.  It was accompanied by a statute criminalizing the failure of

a public official to remit money "belonging to this state" to the

public fund for which the official was holding the money, including,

in addition to those funds specifically named, "any other fund now

in being or hereafter to be established by law for public purposes."

G.L. 1877, § 659.  For many years, these laws remained unchanged

in any relevant way.  *See* G.S. 1883, §§ 768, 769 (for the first time

both titled as "Embezzlement"); Mills' Ann. Stat. §§ 1245, 1246

(1891); R.S. 1908, §§ 1691, 1692; C.L. 1921, §§ 6735, 6736; C.S.A.

10

1935, Ch. 48, §§ 100, 101; §§ 40-5-17, -18, C.R.S. 1953; §§ 40-5-16, -17, C.R.S. 1963. Section 18-8-407 appears to be a direct descendent of the first embezzlement statute.

¶ 20    In 1889, the General Assembly adopted additional prohibitory statutes relating to the misuse of public money by public officials. These statutes addressed using public funds for private purposes, lending public money, and contracting to obtain a benefit from depositing public money with another. 1889 Colo. Sess. Laws 297-99; *see People v. Schneider*, 133 Colo. 173, 176-77, 292 P.2d 982, 984-85 (1956) (discussing such laws); *Moulton v. McLean*, 5 Colo. App. 454, 459-61, 39 P. 78, 80-81 (1895) (same). Our appellate courts have recognized that these provisions were enacted to carry out article 10, section 13 of the Colorado Constitution, which says: "The making of profit, directly or indirectly, out of state, county, city, town or school district money, or using the same for any purpose not authorized by law, by any public officer, shall be deemed a felony, and shall be punished as provided by law." *See Schneider*, 133 Colo. at 177, 292 P.2d at 985; *Moulton*, 5 Colo. App. at 461, 39 P. at 81.

11

¶ 21    The objective of this constitutional provision is to prohibit the misuse of money belonging to the public and which is designated for some public purpose.  We think this objective at least implicitly contemplates ownership of the money or property by the public, and not mere custody or possession.  And therefore, absent any indication to the contrary, statutes enacted to further this objective are so limited.  The nature and timing of enactment of the embezzlement statute from which section 18-8-407 is derived indicates that the first embezzlement statute was among those statutes.

¶ 22    Now, it is true that section 18-8-407 is not worded precisely as it was for the better part of a century.[4]  But it retains language from the older versions relating to the nature of the property: the property must be "property *of* the state."  § 18-8-407 (emphasis added).  And the current version, like the earlier statutes relating to use of public money held by public officials, expressly contemplates a "public use" for the property.  So we conclude that the cases

_____

[4] It appears that the General Assembly adopted the current language in 1967.  *See* Ch. 312, sec. 7, § 40-5-16, 1967 Colo. Sess. Laws 575 (and limiting the statute to embezzlement of "public moneys"); Ch. 121, sec. 1, § 18-8-407, 1971 Colo. Sess. Laws 462 (adding back in "public property").

12

applying related statutes support the notion that section 18-8-407 furthers the objective of article 10, section 13 — to prohibit misuse of money and property owned by the public.

¶ 23     Our preliminary conclusion that "public property" as used in section 18-8-407(1) means property owned by the public finds further support in cases addressing misuse of public money.  In *Wright v. People*, 104 Colo. 335, 341-42, 91 P.2d 499, 502-03 (1939), the supreme court, applying a related statute (one of those adopted in 1889) barring the use of "public funds or moneys" for private purposes, held that certain money received by a county official wasn't subject to the statute because it didn't "belong[] to" the county: the money "never was a part of the public funds of the county; it belonged to [private individuals]."

¶ 24     A few years later, in *Starr v. People*, 113 Colo. 268, 157 P.2d 135 (1945), the court, applying the same statute, held that fees, fines, and penalties collected by public officials were funds subject to the statute because the officials were obligated to turn them over to the state treasurer.  In so holding, the court expressly distinguished the facts from those in *Wright*; in *Starr,* the money

belonged to the state, while in *Wright* it did not.  *Id.* at 274, 157 P.2d at 137.

¶ 25    And in *People v. Fielden*, 162 Colo. 574, 427 P.2d 880 (1967), the court clearly indicated that the same statute applies only to funds owned by the government:

> An essential element of the crime of "embezzlement" or "criminal conversion" charged herein is that the property must be owned by another and the conversion thereof must be without the consent and against the will of the party to whom the property belongs, coupled with the fraudulent intent to deprive the owner of the property.

*Id.* at 576, 427 P.2d at 881 (citation omitted).

¶ 26    Given the similarity between the statute applied in *Wright, Starr*, and *Fielden* and section 18-8-407,[5] and their shared objective, a similar limitation on the application of the latter makes sense.

¶ 27    And if these indications weren't enough, considering the common law origin and purpose of the crime of embezzlement

---

[5] The statute applied in *Wright, Starr*, and *Fielden* provided that any public officer who "convert[ed] to his own use . . . , . . . use[d], by way of investment . . . , or . . . ma[d]e way with or secrete[d] any . . . public funds or moneys . . . received for safe keeping, disbursement, transfer, or for any other purpose" would be subject to five years' imprisonment.  C.S.A. 1935, Ch. 48, § 262.

confirms that mere custody or possession of money or property is insufficient to support an embezzlement charge under section 18-8-407.

¶ 28     At early common law, larceny was the first "theft" crime. A person committed larceny by taking property owned by another from the owner's possession without the owner's consent. Such a "trespass in the taking" was a required element of the offense. 3 Wayne R. LaFave, Substantive Criminal Law § 19.1(a), at 57 (2d ed. 2003). So if one was already in lawful possession of the owner's property, he committed no trespass in the taking — and hence no larceny — by later converting it to his own use. To remedy this problem, legislatures created the crime of embezzlement, which doesn't require a trespass in the taking. *Id.* at §§ 19.1(a)-(b), 19.6(a); *see Gill v. People*, 139 Colo. 401, 407, 339 P.2d 1000, 1003 (1959); *Phenneger v. People*, 85 Colo. 442, 454, 276 P. 983, 987 (1929) ("Embezzlement is common law larceny extended by statute to cover cases where the stolen property comes originally into the possession of the defendant without a trespass." (quoting *Moody v. People*, 65 Colo. 339, 339, 176 P. 476, 476 (1918))).

¶ 29　　Embezzlement therefore "includes all cases where one intrusts the care of *his* property to another, as his agent, who fraudulently appropriates it to his own use, or fraudulently misapplies it.  It is made to cover a class and kind of larceny where the property stolen comes into the hands of the defendant originally with *the owner's* consent . . . ."  *Moody*, 65 Colo. at 340, 176 P. at 476 (emphasis added); *accord Lewis v. People*, 109 Colo. 89, 97-98, 123 P.2d 398, 403 (1942).  It's a crime against the owner of the property.  *People v. Feldstein*, 174 N.E. 843, 845 (Ill. 1931).

¶ 30　　From all of this, we think it necessarily follows that "public moneys or public property" in section 18-8-407 means (and is limited to) money or property owned by the public (i.e., the state or one of its political subdivisions).[6]

---

[6] We therefore apply a meaning of "public property" like that applied by the division in *Gallegos*.  One part of the definition applied in *Gallegos* is potentially confusing.  That definition is, as noted above, "state- or community-owned property not restricted to any one individual's use or possession."  260 P.3d at 23 (quoting Black's Law Dictionary at 1254).  But what does "not restricted to any one individual's use or possession" mean?  Does it mean that public property does not include state-owned property that is used by only one public official or employee (such as, say, a computer or automobile)?  No.  As earlier versions of Black's show, that phrase is merely another way of saying privately owned property.  *See* Henry Campbell Black, *Dictionary of Law* 963 (1891) (public

16

¶ 31　　Contrary to the People's suggestion, *People v. Skrbek*, 42 Colo. App. 431, 599 P.2d 272 (1979), does not support their position that mere custody or possession of money or property by the government is sufficient. In that case, the division applied section 18-8-407. The funds at issue were funds distributed by the federal government to the state to be used by the state for crime prevention and control. The division held that the state's "qualified ownership" of the funds was sufficient to support the charge. *Id.* at 432, 599 P.2d at 272-73; *see also Price v. People*, 78 Colo. 223, 226, 240 P. 688, 689 (1925) ("[Q]ualified ownership is sufficient to support a charge of embezzlement.") (applying an unspecified public official embezzlement statute). We read *Skrbek* as consistent with the notion that public ownership of funds or property is a necessary element of a charge under section 18-8-407.

---

property includes "those things which are *publici juris*, . . . and therefore considered as being owned by 'the public,' the entire state or community, and not restricted to the dominion of a private person"); *id.* at 965 ("publici juris" means "things which are owned by 'the public;' that is, the entire state or community, and not by any private person").

¶ 32    Having determined the meaning of "public property" in section 18-8-407, we turn to determining whether the firearms at issue fall within that meaning.

### C.  Berry Did Not Convert Any "Public Property"

¶ 33    The People concede that Lake County didn't own the guns. And the People have never alleged that any other public entity owned them.  There is no evidence of such ownership in the record; rather, the evidence shows that the husband owned them.  The evidence, therefore, even viewed in the light most favorable to the People, *see Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005), is insufficient to support Berry's conviction for embezzlement.  We vacate that conviction and remand for dismissal of the embezzlement charge with prejudice.[7]

### III.  The Evidence Was Sufficient to Support the Official Misconduct Conviction

¶ 34    Berry contends that the evidence didn't sufficiently prove that he committed "an act relating to his office but constituting an unauthorized exercise of his official function," an element of first degree official misconduct.  More specifically, he argues that his

---

[7] Given our resolution of this issue, we need not resolve Berry's other contentions relating to his embezzlement conviction.

purchase of the guns, under the evidence presented, was not an act relating to his office.

¶ 35    Although there is no Colorado legal authority defining the scope of acts that "relate to [an] office," at least one other state has a similar official misconduct statute, and its courts have construed the term "relating to his office."

¶ 36    The New Jersey official misconduct statute provides that a public servant is guilty of official misconduct when "[h]e commits an act relating to his office but constituting an unauthorized exercise of his official functions."  N.J. Stat. Ann. § 2C:30-2(a) (West 2016).  In *State v. Schultz*, 367 A.2d 423, 430 (N.J. 1976), the defendant was a precinct clerk who used "his De facto authority" to cause for his personal benefit the cashing of a check made payable, not to him, but to the municipal violations bureau.  The New Jersey Supreme Court rejected the defendant's argument that cashing the check wasn't part of his official duties as a precinct clerk because the fact that his "duties and authority did not in fact extend to such activities is not controlling on the question of whether they were done under color of office."  *Id.*

¶ 37    More recently, in *State v. Bullock*, 642 A.2d 397 (N.J. 1994), the defendant, a suspended state trooper, retained his police identification card, which he then used to detain an alleged drug dealer. He also used the card to identify himself as a state trooper to another officer. *Id.* at 398. In affirming the defendant's official misconduct conviction, the court held that "when law-enforcement officers commit an act of malfeasance because of the office they hold or because of the opportunity afforded by that office, their conduct sufficiently relates to their office to support a conviction." *Id.* at 401.

¶ 38    Like the defendants in the New Jersey cases, Berry committed an act relating to his office because he used his office as a sheriff's deputy to facilitate and effectuate the purchase of the guns. Berry followed the wife in his police car, spoke to her while in full police uniform, and gave her comfort that, because he was a police officer, the transaction was lawful.

¶ 39    These facts, when viewed in the light most favorable to the prosecution, support a finding by the jury that Berry used his office to facilitate and engage in an unlawful transaction and thus committed "an act relating to his office but constituting an

unauthorized exercise of his official function." Thus, we conclude that sufficient evidence supports the official misconduct conviction.

## IV.  Conclusion

¶ 40    The judgment of conviction for embezzlement of public property is vacated, and the trial court is instructed on remand to enter a judgment of acquittal on that charge.

¶ 41    The judgment of conviction for first degree official misconduct is affirmed.

JUDGE DAILEY and JUDGE BERGER concur.