## No. 9527.

### RADINSKY *v.* THE PEOPLE.

1. CRIMINAL LAW—*Grand Jury—Duty to Testify Before.* One is not relieved of the duty to testify before the grand jury merely because his testimony may tend to influence claims asserted by him in civil action.

2. ——*Excuses.* Prejudice of the Presiding Judge of the Court against the witness, is no ground to refuse to testify before the grand jury.

3. PRIVILEGES AGAINST SELF INCRIMINATION—*Extent Of.* Plaintiff in error had been a candidate for office, and at the ensuing term of the District Court the grand jury was charged by the presiding judge to investigate rumors of his unlawful expenditure of money in that election. The fact that his conduct was so in question did not excuse him in a general refusal to testify as to any and every matter, connected, however remotely with the election.

4. WAIVER OF PRIVILEGE. The privilege against self incrimination may be waived by one informed of his right. The plaintiff in error *held* to have waived his privilege.

*Department One.*

*Error to Adams District Court, Hon. John A. Perry, Judge.*

Mr. WILLIAM G. SMITH and Mr. PHILIP HORNBEIN, for plaintiff in error.

Hon. VICTOR E. KEYES, Attorney General; Mr. CHARLES ROACH, Deputy Attorney General, and Mr. CHARLES E. FRIEND, for The People.

Burke, J.

PLAINTIFF in error was fined $250 in the District Court of Adams county, for contempt, for a refusal to testify before a grand jury, and this cause is now before us on his application for a supersedeas.

December 17, 1918, Judge Class, of the First Judicial District, presiding in the District Court of Adams county, and acting upon a request of the District Attorney of that district, called a grand jury to meet December 26, 1918,

on which date the body was regularly impaneled, sworn and instructed.   On the following day a subpoena was issued for plaintiff and he appeared before the grand jury in response thereto.

At the general election held November 5th, 1918, plaintiff was a candidate for the office of representative in the general assembly.   His opponent, W. C. Swinehart, was declared elected, and about the time of the impaneling of this grand jury plaintiff filed in the office of the Secretary of State a contest against said Swinehart, alleging that irregularities had occurred in certain precincts in Adams County.   In that contest Judge Class (whose term of office would expire January 14, 1919) had apparently entered his appearance as attorney for Swineheart.   It does not appear that the grand jury was called primarily, or at all, for the purpose of investigating matters pertaining to the election. Other subjects were given it in charge, and it had before it all matters proper to be considered by such a body. Among other things, however, the Judge did call its attention to the alleged election irregularities, and  expressed the opinion that such charges were without foundation; recommending, however that the judges and clerks of election should be exonerated or indicted as the evidence justified.    He further called attention to the fact that plaintiff had filed a statement of his election expenses in which his total expenditure was fixed at $280, and added:   'Now, I am of the opinion that he spent considerably more than that.   If all these rumors and talks are true, it comes very nearly being a couple of thousand dollars, in an attempt to debauch the electorate of this county, and he can not do it, but the mere fact that he failed  to do so does not take him without the pale of the law.   If he spent money for illegal purposes, or if he made a false affidavit, Mr. Radinsky ought to be investigated.   These are important matters. *   *   *   I think that item of expense ought to be inquired into, and we don't want any whitewashing about that, either."

Plaintiff first appeared before the grand jury January 2, 1919, and refused to be sworn. In justification of his refusal he presented to that body a written statement, setting out in full the instructions of Judge Class to the grand jury, so far as they related to him or to the general election, and basing his refusal upon the alleged interest of the judge in the matters under investigation, his prejudice against plaintiff, and his appearance as counsel for Swineheart. The grand jury, by its foreman, laid these matters before the District Court, and in response to a citation to show cause why he should not be punished for contempt for his refusal to testify, plaintiff presented, in substance, the same matters. Thereupon Judge Class called in Judge Perry, of the Second Judicial District, before whom all further proceedings were had.

On January 3, 1919, plaintiff appeared before Judge Perry, who held that he could not refuse to be sworn, and ordered that he go before the grand jury and be sworn and testify; carefully explaining to him, however, that he could properly refuse to answer any questions on the ground that his answers might tend to incriminate him. Plaintiff returned to the grand jury room, was sworn, and was interrogated at length. The testimony he gave was brief and unimportant. Most of the questions he refused to answer. He exonerated the District Attorney and all the grand jurors from any interest, bias or prejudice, or improper motives, but referred to his written statement and repeated his charges against Judge Class. Some of the questions asked related to his expense account. Most of them to other matters. He declined to say whether he knew where Precinct 7 in Adams County was; whether he knew anything with reference to the conduct of judges or clerks of election whereby any of them committed any error, or made any mistake. He declined to answer any questions concerning the primary election, and refused to answer any questions concerning his knowledge of any other person who might give the grand jury information on any of these subjects.

The reason repeatedly given for such refusal was that it "will hurt the cause I have now before the House of Representatives." Asked if he had any fear of harm coming to himself by reason of any testimony he had been called upon to give before the grand jury, he declined to answer that question.

On the same day the contempt matter was again presented before Judge Perry, where plaintiff added to his written objections urged before the grand jury the further objection that, by the court's instructions to that body, he was himself under investigation by it; hence claimed "his constitutional right to refuse to testify." Asked by Judge Perry his reason for refusing to answer, he said his answers might tend to embarrass him in his election contest. "If I should use one word before the jury there, he (Judge Class) is liable to twist it into such shape that it cannot be recognized as to the meaning of it." Also, "partly" on the ground that the answers might tend to incriminate him because he (Judge Class) "is liable to incriminate me, twist it out of shape where you cannot recognize it in the proceedings any more."

There being thus some indication that plaintiff claimed exemption from answering *some* of the questions on the ground that his answers thereto might tend to incriminate him, he was given until 10 a. m., January 7th, to point out the questions which he objected to answering on that ground. Recess was accordingly taken until the last named date. Plaintiff made no attempt to comply with this order, but on the reconvening of the court on January 7th his counsel argued at length the objections already made, stating that plaintiff was willing to tell the whole story "if the conditions arise, that this contest was not pending and it would not be in any manner possible to bring it in to influence the case, either by the leakage of some member or by the subpoena of the legislature compelling the evidence to be produced." Hereupon he was interrupted by plaintiff, who said, "Even while the contest is pending I am willing

to answer before any jury which does not get its instructions from Judge Class." To this his attorney replied: "That is very good. I would like to have that entered of record."

At the close of the argument the trial judge overruled these objections and pronounced judgment.

---

Mr. Justice Burke delivered the opinion of the Court:

Three reasons are urged by plaintiff why the judgment in contempt is invalid:

*First*: Plaintiff contends that evidence given by him before the grand jury might prejudice his interests in the election contest.

One is not relieved of the duty to testify in preliminary examinations, or before grand juries, or in criminal cases, merely because such testimony may have a tendency to influence claims made by him in civil actions.

In re Cliffe, 97 Fed. 540; in the Matter of Kip, 1 Paige (N. Y.), 601.

Furthermore, under our statute, his adversary may require him to answer, as upon cross-examination, in such actions.

*Second*: Plaintiff contends that the moment Judge Class became interested as counsel in the election contest he lost all jurisdiction in any judicial inquiry concerning that matter and that the grand jury, as a branch of his court, and instructed by him, lost all such jurisdiction, and as to such subjects their future acts were a mere nullity.

If the prejudices of the trial judge and his determination to disregard statutory provisions to the end that he might secure a grand jury which would indict a particular person would not deprive judge or jury of jurisdiction in that investigation, as held in *People v. District Court*, 29 Colo. 83, 66 Pac., 1068, then the facts in the instant case would not do so; and if where such charges are made against the trial

judge the right of challenge is not "a proceeding under which the trial judge may be himself put upon trial, or required to pass upon, or consider, the truth or falsity of charges of bias, partiality or unfairness made against himself," as there held, then a proceeding for contempt for the refusal of a witness to testify before such Grand Jury is not such.

In *Rolland v. The Commonwealth,* 82 Pac. 306, 22 Am. Rep. 758, it was held no ground to quash an indictment for burglary that two of the grand jurors were stockholders in the bank burglarized. If such an interest of grand jurors in the matter under investigation would not nullify the proceedings, the interest of the trial judge herein charged could not have that effect.

It has been repeatedly held "that it is no objection to the validity of an indictment that one or more of the grand jurors, who was otherwise qualified, had formed or expressed an opinion of the guilt of the accused."

*Commonwealth v. Woodward,* 157 Mass. 516, 32 N. E. 939, 34 Am. St. 302; *United States v. Belvin,* (C. C.), 46 Fed. 381.

That being true, no such opinion, formed or expressed by the trial judge, could relieve a witness from the obligation to testify before a grand jury.

If Judge Class was practicing law contrary to the statute, or if the grand jury might have returned an indictment against plaintiff by reason of the improper influence of the judge who instructed them, prompted by malice or personal interest, those matters cannot be litigated in this action. It is admitted that the grand jury was a lawfully constituted body. It was proceeding within proper limits and investigating a matter within its jurisdiction. Such investigation could not be defeated or postponed by the injection therein of a question of personal relations between the trial judge and a witness.

*Third:* Plaintiff contends that, under the instructions hereinbefore set out, he was himself under investigation

by the grand jury, charged with making a false affidavit of election expenses, which, by statute, is made a criminal offense, and that by reason thereof he was exempted from examination as a witness as to those matters.

*United States v. Edgerton* (D. C.) 80 Fed. 374; *Tuttle v. People,* 33 Colo, 224, 79 Pac. 1035, 70 L. R. A. 33, 3 Ann. Cas. 513.

The force of this contention cannot be denied, nor the authorities cited in support of it disputed. Its validity, of course, goes only to such questions as concern plaintiff's own conduct. As to those, no court has ever held that the privilege could not be waived by one fully advised of his rights.

One entitled to claim exemption from examination on the ground that he is himself under investigation may waive such claim. The mere fact that he was called and sworn as a witness does not alter the situation. After waiver, he stands as if he had been brought before the jury on his own request for that purpose.

*State v. Trauger* (Iowa), 77 N. W. 336; *United States v. Kimball,* CC, 117 Fed. 156.

In the instant case plaintiff, from first to last, was acting under advice of counsel and, moreover, was fully informed by Judge Perry of his rights. He could not, under this rule, claim exemption from testifying on other matters and, so far as the exemption existed, he waived it, first by his disobedience of the court's order to designate the objectionable portion of the examination; second, by the statement of his counsel, and third, by his own specific and voluntary offer in open court to testify fully "before any jury which does not get its instructions from Judge Class." Thus, fully informed of his rights and acting under advice of counsel, he expressly waived his exemption from testifying on the ground that his answers might tend to incriminate him, and on the ground that his own conduct was under investigation, and confined his objections solely on the grounds of the interest of Judge Class in the matter

in question and the possible effect of his answers on his election contest.

These grounds have already been disposed of.

Aside from these contentions of plaintiff, his sweeping refusal to testify on any matter touching the election, however remotely, was a clear contempt, outside any defense which he claims to present.

The supersedeas is denied. The briefs and record before us are full and complete. No reason appears for a further hearing, and, under the rules of this court, the judgment is affirmed.

Garrigues, C. J., and Teller, J., concur.