No. 15,932.

THE PEOPLE *v.* McPHAIL ET AL.

(197 P. [2d] 315)

Decided August 9, 1948.   Rehearing denied September 7, 1948.

Mr. James T. Burke, District Attorney, Mr. Charles E. Grover, Deputy, Mr. H. Lawrence Hinkley, Attorney General, Mr. Duke W. Dunbar, Deputy, for the people.

Mr. Kenneth W. Robinson, Mr. Robert D. Charlton, Mr. Robert Swanson, for P. O. McPhail; Mr. Edwin P. Van Cise, Mr. Philip S. Van Cise, for Joe S. Breuch, defendants in error.

*En Banc.*

Mr. Chief Justice Burke delivered the opinion of the court.

Defendants in error, police officers of the city of Denver, are hereinafter referred to as defendants or by name. August 29, 1946 indictments were returned against them charging murder, assault with intent to commit murder, assault and battery, and assault under cover of authority. The alleged victim was Frank Pena, Sr. Pleas in abatement and motions to quash were sustained. The people excepted and bring the case here for review under authority of section 500, chapter 48, page 1145, volume 2, '35 C.S.A., assigning as error the rulings above referred to. The principal basis of the motions and pleas was that defendants' constitutional rights were violated by their being called, sworn and examined before a

grand jury on matters then under investigation and touching charges later contained in the indictments. The answer thereto was that they had waived their immunity. They further contended that their examination was contrary to section 448, chapter 48, page 1108, volume 2, '35 C.S.A., which provides that the grand jury * * * "shall hear the witnesses on behalf of the people only * * *." Minor points mentioned in the briefs require no notice.

On petition of the district attorney a special grand jury was called to investigate "charges of unnecessary roughness, assault and brutality, against law enforcement officers of the city and county of Denver." July 15, 1946 it was instructed, inter alia: "It is your duty, as a body, to investigate and inquire into alleged infractions of the laws of this commonwealth. In so doing, you may call before you such persons as you believe may throw light upon the matter under investigation and you may examine such persons as witnesses. * * * Unlike the jury sitting in the trial of a cause, you will hear only witnesses for the people, * * *. You are not limited by these instructions in the scope of your investigations."

In the discharge of its duties the grand jury was investigating the circumstances surrounding the death of Frank Pena, Sr., at which time the defendants were subpoenaed and sworn and the following proceedings were had:

Witness McPhail, questioned by deputy district attorney Anderson: "Q. I am going to ask you a few questions concerning another case, the case of Frank Pena, Sr., in which you were also involved, * * *. I think I should again for the purpose of the record here warn you that you may be the subject of investigation, I don't know. You have a constitutional right and a legal right to decline to answer any questions that may tend to incriminate you. Now, knowing that, do you wish to waive your constitutional right and voluntarily testify

concerning that case? A: I have nothing to fear. I have nothing to hide or conceal. I have nothing—I have no reason for not waiving it. Q: Well, do you waive your right? A: Yes, I will waive it. Q: And will you go ahead and testify here voluntarily, understanding your legal right in the matter, and tell us what you know about it? A: Yes, I will tell you what I know about it." Thereupon McPhail was accordingly examined.

(Witness Breuch, questioned by deputy district attorney Anderson): "Q: Now officer Breuch * * * I am going to ask you some questions concerning the case of Frank Pena, Sr. You have a constitutional right, as you know, to decline to answer any questions which may tend to incriminate you. You may waive that right if you choose, and voluntarily answer the questions, or you may stand upon your constitutional rights and refuse to answer the questions. Now I want to advise you fully about that so you will know what your situation is here. * * * You remember the incident don't you? A: Yes, I do. Q: Now this is the thing I am going to question you about and if there is anything in that that you think might tend to incriminate you, you have a constitutional privilege to decline to answer my questions. You can't be forced to give any testimony against yourself; you know that as a police officer? A: Yes, I do. Q: And you have that right. If you want to waive it you can. If you don't want to you don't have to. What do you want to do? A: I will waive it then, and answer your questions. Q: You want to waive your constitutional right? A: Yes sir. Q: You understand here you are testifying voluntarily? A: I do. Q: Nobody has promised you anything, have they? There has been no promise of immunity? A: Nobody has even talked about it since the Coroner's inquest. Q: Nobody has offered you any immunity for coming here and testifying? A: No. Q: You don't expect any? A. No." Thereupon Breuch was accordingly examined.

On this record it is contended by counsel for de-

fendants that their "constitutional privilege against self incrimination was violated." "No person shall be compelled to testify against himself in a criminal case * * *." Colorado Constitution, Art. II, §18. It is uniformly held that said section extends its protection to proceedings before grand juries. The record clearly discloses that at the time defendants were called and examined the grand jury was investigating all angles of the death of Frank Pena, Sr.

Counsel for defendants divide the several states on whose decisions they rely into: (a) Those which forbid the subpoena of any defendant before a grand jury; (b) Those which forbid the calling of anyone under investigation; (c) Those which grant immunity to one testifying under compulsion of subpoena; and (d) Those holding that ample information of his rights must precede examination of a witness to support a waiver of the privilege. It is certain that Colorado does not fall in either of the first three classes, from which alone all defendants' authorities in point come. Hence we make no attempt to differentiate or discuss those.

The people rely upon the rule applied in many adjudicated cases, clearly stated, reasoned and approved in the following, inter alia: *United States v. Kimball,* 117 Fed. 156; *O'Connell v. United States,* 40 F. (2d) 201, 205 (13), 51 Sup. Ct. 658, 75 L. Ed. 1472. We think they are right but for the following reasons we do not examine these cases.

When a question arises here which has been before this court in a case clearly in point, has been ably argued by competent counsel, received our careful consideration, been unequivocally decided, and that decision has stood unchallenged over a long period of years, we have no disposition to reopen the subject while constitution and statutes remain unaltered. Such is the situation now confronting us.

The people, in their opening brief here, cited and relied upon a case decided by this court almost thirty

years ago. *Radinsky v. People,* 66 Colo. 179, 180 Pac. 88. In their answers counsel for neither defendant mentions it. It definitely settles the question before us. However, counsel for the people inform us, in their brief, that this authority was not brought to the attention of the trial court.

Radinsky was called before a general grand jury which had, however, been especially instructed to make investigations concerning a general election and his connection therewith. At first he refused to be sworn. The court ordered him to take the oath but told him he could refuse to answer any question on the ground that his answer might tend to incriminate him. He returned and was sworn but refused to answer practically all the questions propounded. His reasons were put in writing, including the fact that he was himself under investigation. A recess was taken and meanwhile he was requested to point out those questions his answers to which might tend to incriminate him. He again refused and his counsel argued the reasons contained in his written objections. He was fined for contempt and brought the cause here for review. In affirming the judgment we said:

"One entitled to claim exemption from examination on the ground that he is himself under investigation may waive such claim. The mere fact that he was called and sworn as a witness does not alter the situation. After waiver, he stands as if he had been brought before the jury on his own request for that purpose."

"Fully informed of his rights and acting under advice of counsel he [Radinsky] expressly waived his exemption from testifying on the ground that his answers might tend to incriminate him, * * *."

█ █ Defendants' contention that they could not be questioned at all because of the statutory provision quoted, supra, is unsupported by any authority in point, or any cogent reasoning. The act is clearly intended only to differentiate between an inquest and a trial.

The district attorney is the sole judge of what witnesses he will call and when so summoned they are, for the time being, witnesses for the people. The prohibition simply prevents one under investigation from calling witnesses to exculpate himself and thus turn the inquest into a trial. One himself suspected of crime may be called, excused and exonerated, and later appear for the people on the trial of another. One to whom no slightest suspicion has attached may be called and examined and later indicted. Any other rule would lead to an absurdity, permitting any witness called before an inquest to escape examination on the ground that he was not a witness for the people because, on the trial of the matter under investigation, he intended to be a witness for the defendant.

For the reasons above given the judgment is reversed and the cause remanded with directions to overrule the motions to quash and pleas in abatement and require defendants to plead to the merits. *People v. Williams*, 61 Colo. 11, 20, 155 Pac. 323.

Mr. Justice Hilliard dissents.