UNITED STATES of America,

v.

Henry W. GRUNEWALD, Daniel A. Bolich and Max Halperin, Defendants.

United States District Court
S. D. New York.

June 9, 1958.

See also 164 F.Supp. 640.

Paul W. Williams, U. S. Atty., New York City, Robert Kirtland and Robert B. Fiske, Jr., Asst. U. S. Attys., New York City, for the Government.

John C. Walsh, New York City, for defendant Henry W. Grunewald.

Rudolph Stand and Frank Aranow, New York City, for defendant Daniel A. Bolich.

Murray E. Gottesman, New York City, for defendant Max Halperin. Jack J. Elkin, New York City, of counsel.

HERLANDS, District Judge.

Can the Government properly introduce into evidence as admissions binding solely on defendant Halperin portions of Halperin's testimony given upon the first trial?

On Friday, the 6th of June, the prosecution stated outside the hearing and presence of the jury that it intended to offer into evidence during the course of the present trial certain portions of defendant Halperin's testimony given at the first trial. Such prior testimony would be offered solely against Halperin and not against Grunewald and Bolich.

In behalf of Halperin it was argued by his counsel that such testimony would be irrelevant, that the introduction of such testimony by the prosecution would constitute an indirect violation of Halperin's Fifth Amendment privilege by putting pressure upon him to take the stand at the current trial; and, finally, that in view of the Supreme Court's reversal of Halperin's conviction at the first trial

upon the ground, inter alia, that he had been improperly cross-examined and in view of the circumstance that under the doctrine of verbal completeness Halperin would ordinarily have the right to put in all of the other portions of his prior trial testimony that would have a contextual and qualifying relationship to the portions introduced by the Government, and in view of the alleged further circumstance that the doctrine of verbal completeness cannot be effectively recognized herein because of the commingling of improper prior testimony with proper prior testimony the Government cannot upon this trial put into evidence the excerpts of Halperin's prior testimony that the Government selects.

For the following reasons the Court holds to the view that such prior trial testimony of Halperin is properly admissible, assuming it otherwise satisfied the standards of relevancy and materiality, and that in order to protect the rights of Grunewald and Bolich the Court will instruct the jury that such prior testimony is being admitted only as against Halperin and should not be considered by the jury as against Grunewald and Bolich.

■ The doctrinal trend in the modern law of evidence is towards full disclosure and greater admissibility. See McCormick, Evidence 1954, page XI. A definite policy in favor or admissibility has been announced by the Court of Appeals for the Second Circuit. See United States v. Apuzzo, 2 Cir., 1957, 245 F.2d 416, 420–421. A countervailing force arises out of the operation of a constitutional or statutory privilege that may render evidence either unobtainable (United States v. Miranti (United States v. Bando), 2 Cir., 1958, 253 F.2d 135; United States v. Trigilio, 2 Cir., 255 F.2d 385) or inadmissible (Benanti v. U. S., 1957, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126; Grunewald v. United States, 1957, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931).

That result is sometimes phrased in terms of the canon that constitutional privileges and civil liberties should be liberally construed. See United States v. Hoffa, D.C.S.D.N.Y.1957, 156 F.Supp. 495, 514. In the particular application of these generalized principles the Court is called upon to weigh and appraise the relative values of the competing policies and logic in the factual context of the specific case.

■■ How then should the question of the choice of values be resolved in the case at bar? We turn to the specific facts as the first point of inquiry. Defendant Halperin voluntarily took the stand in his own defense at the first trial before Judge Dawson. Defendant Halperin not only was an experienced lawyer himself but also had the advice and representation of eminent trial counsel, in making the decision to testify. This reasoned and deliberate choice constituted a waiver of Halperin's Fifth Amendment privilege with respect to the testimony so given. That waiver was not conditioned upon a limited use of the testimony. The Court holds that the testimony was not subject to defeasance at the end of the first trial. The reasonableness of that conclusion may be tested by considering the more familiar case of a witness who is subpoenaed before the Grand Jury and is, we will assume, advised of his Fifth Amendment privilege. If the witness proceeds to testify, his Grand Jury testimony can thereafter be used against him as part of the prosecution's direct case upon the trial of an indictment against the witness. 8 Wigmore Third Edition, Section 2363, page 727, cases collected at page 727, note 2, and 1957 pocket supplement, page 254.

A fortiori, testimony given by a defendant as a plenary hearing where he is not summoned as a witness by the Government, where there are the judicial safeguards of an adversary proceeding and where the defendant has the aid of counsel, is admissible in evidence upon the prosecution's direct case.

In United States v. Yates, D.C.S.D. Cal.1952, 107 F.Supp. 408, at page 411, District Judge Mathes said:

"On the other hand, if defendant Yates should not elect again to take the stand, her entire testimony at the first trial might then be read to the jury by the plaintiff, either as admissions by the defendant, 2 Wharton, Criminal Evidence, § 679 (11th ed. 1935); see Jackson v. State, 1925, 29 Okl.Cr. 429, 234 P. 228, 229; West v. State, 1922, 24 Ariz. 237, 208 P. 412, 416; People v. Thourwald, 1920, 46 Cal.App. 261, 189 P. 124, 126–127; State v. King, 1917, 102 Kan. 155, 169 P. 557, 558, or under the reported-testimony exception to the hearsay rule. See Mattox v. United States, 1895, 156 U.S. 237, 240–244, 15 S.Ct. 337, 39 L.Ed. 409; Smith v. United States, 4 Cir., 1939, 106 F.2d 726, 728; American Law Institute, Model Code of Evidence, Rule 511 (1942).

"The defendant's testimony at the first trial being voluntarily given, no claim of privilege against self-incrimination as to such reported testimony could be raised. Caminetti v. United States, 1917, 242 U.S. 470, 493–495, 37 S.Ct. 192, 61 L.Ed. 442; United States v. Gates, supra, 176 F. 2d [78] at page 79; see Johnson v. U. S., 1943, 318 U.S. 189, 196, 63 S. Ct. 549, 87 L.Ed. 704; cf. Raffel v. United States, 1926, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054."

In Warde v. United States, 1946, 81 U.S.App.D.C. 355, 158 F.2d 651, in affirming the defendant's conviction, the Court of Appeals said:

"Testimony of appellant Walling at a previous trial, together with bank statement to which it related, were rightly admitted since his testimony had some tendency to establish his guilt. Milton v. United States, 71 App.D.C. 394, 110 F.2d 556."

In Milton v. United States, 1940, 71 App.D.C. 394, 110 F.2d 556, at page 560, the Court of Appeals in affirming the conviction said:

"The applicable rule is well stated in Rafferty v. State, as follows: 'It is true that there was no power to compel the defendant to testify against herself; but, having voluntarily gone on the witness stand in her own behalf on the former trial, and there made statements against her interest, it was entirely competent for the State, on the second trial, to prove those statements as admissions voluntarily made. Admissions made under such circumstances may be proven in the same manner and for the same reasons that admissions made out of court may be proven.' "

In Kaplan v. United States, 2 Cir., 1925, 7 F.2d 594, at page 597, Judge Hand, speaking for a unanimous court, said:

"The last question is the admission of the testimony given by the Kaplans in the bankruptcy proceedings. Not being themselves bankrupts, they were not protected by Section 7(9) of the act * * * and their admissions were competent against them upon the trial of an indictment, as in a civil cause. Had they wished to remain mute, no doubt they might have done so; but, having once consented to speak, any privilege was at an end. We think it unnecessary to elaborate so plain a point."

In 5 A.L.R.2d 1404, in a comprehensive annotation entitled "Use in Subsequent Prosecution of Self-Incriminating Testimony Given Without Invoking Privileges," cases are collected at page 1411 in support of the following proposition:

"The fact that the defendant does not choose to take the stand at the second trial has been held not to prevent the use of his testimony given at the former trial if it would otherwise be admissible."

■ Accordingly, it is concluded that any relevant and material statements made by Halperin at the first trial

which constitute admissions may be introduced in evidence by the Government upon this trial. This is, of course, without prejudice to the defendant's right to put into evidence such parts of the remainder of Halperin's former testimony as would be properly admissible under the doctrine of verbal completeness.

■ Extrajudicial admissions made by a defendant are admissible under long-standing rules of evidence. There is no sound reason for a different treatment of admissions made at a former trial where the defendant with full knowledge and legal advice takes the stand and makes the statements constituting admissions.

■ The issue may be analyzed in still other terms from the viewpoint of the principle of "unavailability", which makes prior testimony admissible in a subsequent trial when the witness has become unavailable. If the testimony of a witness becomes currently unavailable, as where a defendant in a criminal trial cannot be put on the stand by the prosecution because of the Fifth Amendment, the former testimony of the defendant should be receivable in evidence. McCormick On Evidence, 1954, page 494; Wigmore On Evidence, Third Edition, Section 1409, page 163.

■ McCormick states that a witness is properly regarded as unavailable if he exercises a privilege not to testify at all "such as the privilege of the accused in a criminal case," and that such unavailability makes his former testimony admissible. Nor can it be argued persuasively that the use of the former trial testimony upon the present retrial constitutes improper pressure upon the defendant to take the stand, thus *invading* his privilege to remain mute. Presumably the defendant told the truth when he testified at the former trial with respect to the same transactions. The prosecution's use of that former testimony constitutes no more pressure than the prosecution's use of any other admission made by the defendant. That the

prosecution's proof may tend to incriminate the defendant and the defendant may deem it desirable to take the stand does not spell out improper pressure. Inferences flowing from properly adduced evidence do not constitute a coercive force in violation of a defendant's Fifth Amendment privilege.

■ Under the general principle of "verbal completeness," such a defendant against whom part of an utterance has been put in evidence, may, in his turn, complement it by putting in the remainder, in order to secure for the jury "a complete understanding of the total tenor and effect of the utterance". 7 Wigmore On Evidence, Third Edition, Section 2113, page 523.

In such a case, as Wigmore observes, the defendant himself may "put in the remainder" and "the only question can be as to the scope and limits of the right". In defining the scope and limits of the right to "put in the remainder", the guiding principle is whether the remainder sought to be put in relates to the same subject and whether the remainder is necessary to make that which has been put in by the prosecution properly understood. The remainder of the material that is put in must be relevant in order to make the portion which is originally introduced understood or to explain, clarify or qualify that which was originally put in.

Wigmore concludes that "no more of the remainder of the utterance than concerns the same subject, and is explanatory of the first part, is receivable". 7 Wigmore, Section 2112, pages 523–525. The rationale of the rule which permits considering the utterance as a whole "is to be able to put a correct construction upon the part which the first party relies upon, and to avoid the danger of mistaking the effect of the fragment whose meaning is modified by a later or prior part." 7 Wigmore, Section 2113, page 525.

The Government in the present case has given defendants reasonable notice in writing, as well as orally, of the pre-

cise pages and lines of Halperin's former testimony that it proposes to offer in evidence. The Court's examination of this proffered evidence discloses that it does not contain any reference to the cross-examination of Halperin at the first trial which was deemed to involve reversible error by the Supreme Court. The particular reversible error, according to the Supreme Court, consisted in the trial court's having permitted the prosecution to cross-examine Halperin with respect to his having claimed his Fifth Amendment privilege before the Grand Jury and refusing to answer questions which upon the trial he did answer. If we construe such cross-examination to constitute contaminated evidence, it will be readily seen that such a contamination may be treated as a local infection which can be excised from the body of Halperin's former trial testimony, leaving the balance of his testimony uninfected in terms of context of meaning, by such excision.

■ If, hypothetically, the contaminated cross-examination had, like a cancer, infected or affected the body of Halperin's trial testimony so that it would have been impossible or unfair to permit the Government now to use pieces and patches of Halperin's testimony, then the Court, under the doctrine of verbal completeness, would be compelled to rule out all of Halperin's testimony. But such is not the condition with which we have to deal. Prophylactic surgery can be performed by the Court in such a way as to preserve intact that portion of the former trial testimony which the Government proposes now to introduce or read into evidence.

■ Observing the spirit and the rationale of the doctrine of verbal completeness, the Court holds that the elimination of the contaminated cross-examination on the first trial will not violate the requirements of the rule of completeness.

As Chief Judge Clark said in United States v. Apuzzo, 2 Cir., 1957, 245 F.2d 416, 422:

"This is the familiar doctrine of 'verbal completeness,' see 7 Wigmore on Evidence, §§ 2094, 2115 (3d Ed. 1940), and is designed to prevent limitation of evidence to warp the truth and confuse the jury. Where the testimony necessary to complete the story is hearsay or other excludable matter, the trial judge has discretion in deciding whether or not to permit completion. McCormick on Evidence, 132 (1954). The same discretion must be allowed when completeness is sought not on redirect but in the course of the cross-examination, as here."

■ The Court will not extend the Fifth Amendment by strained logic or circuitous implication in order to proscribe evidence that is otherwise admissible. This view is supported by the circumstances that the admission of the defendant's former testimony upon the present trial "violates no statute and no rule which the Supreme Court has made in the exercise of its supervisory power over administration of the lower federal courts. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819." United States v. Costello, 2 Cir., 255 F.2d 876.

■ Finally, it is not amiss to point out that "the light of reason and experience" is a desideratum expressly articulated by Rule 26 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.

That is the ruling of the Court, gentlemen, on Halperin's former trial testimony. There will be an exception in favor of all the defendants.