John Allan LONDON, Plaintiff-Appellant,

v.

L. N. PATTERSON, Superintendent, Deuel Vocational Institution, Defendant-Appellee.

No. 26466.

United States Court of Appeals, Ninth Circuit.

July 10, 1972.

Rehearing Denied Oct. 12, 1972.

John Allan London, Mountain View, Cal. (argued), Phil Ginsberg, Seattle, Wash., for plaintiff-appellant.

Louise H. Renne, Deputy Atty. Gen. (argued), John T. Murphy, Deputy Atty. Gen., Evelle J. Younger, Atty. Gen., San Francisco, Cal., for defendant-appellee.

Before KOELSCH, TRASK and GOODWIN, Circuit Judges.

TRASK, Circuit Judge:

This appeal is from the denial of petitioner's request for a writ of habeas corpus, without an evidentiary hearing. The district court had jurisdiction under 28 U.S.C. § 2241, this court's jurisdiction on appeal is pursuant to 28 U.S.C. § 2253, a certificate of probable cause having issued from the district court.

In 1964, petitioner, John London, was financial advisor to Mrs. Muriel T. Geddes. As a result of this relationship, on March 7, 1966, Mrs. Geddes filed suit against London in Superior Court for the State of Washington, alleging that London had obtained $740,000 from her: (1) as a cash loan which had not been repaid; (2) under a scheme to defraud her; or (3) under the guise of performing legal services, which he was not licensed to do. She prayed for a judgment against London for $740,000 plus six percent interest, and taxable costs.

Pursuant to pre-trial discovery procedures, London's deposition was taken on March 24, 1966, during which he testified that he did not have Mrs. Geddes sign various documents, that he did not sign them for her, and that he had given a handwriting exemplar to the police. We do not know the outcome of that action.

On June 15, 1966, London was indicted on two counts of forgery, Cal.Penal Code § 470, and one count of grand theft, Cal.Penal Code § 484, arising out of a transaction which was at least part of the subject matter of Mrs. Geddes' civil suit against him. On London's advice, Mrs. Geddes had invested in Holiday Lodge, Reno, Nevada. The lodge got into serious financial difficulty, and in order to "save" Mrs. Geddes' investment, London arranged a $50,000 loan from Concord National Bank to Metro-Urban Corporation to be guaranteed by Mrs. Geddes' $50,000 note, which London was accused of forging.

London's first trial on the criminal charges ended in October 1966, with a hung jury. A second trial was held in December 1966. At this trial, the prosecution read to the jury portions of the deposition London had given in the civil action brought by Mrs. Geddes. No objection was made to the use of the deposition as evidence.

Petitioner was convicted on May 8, 1967, the proceedings having been suspended under Cal.Penal Code § 1203.03 to place petitioner in a diagnostic facility for observation. He was sentenced to state prison for the term prescribed by law, and is currently on probation.

London's conviction was affirmed on September 27, 1968, by the Court of Appeal, First Appellate District, where he contended only that the instructions given at the trial were erroneous. He filed a petition for hearing with the California Supreme Court on the same ground, which was denied on November 20, 1968. On November 29, 1968, petitioner filed a petition for writ of habeas corpus with the California Supreme Court raising for the first time the issue presented in his federal habeas petition; it was denied.

On March 6, 1969, petitioner filed his request for a writ of habeas corpus in federal district court. London contends that he was denied due process because the prosecution, during its case in chief, read to the jury portions of the deposition petitioner had made in the civil action brought by Mrs. Geddes. At the time of the deposition, petitioner asserts, he was aware of no criminal action pending against him nor of the possibility of any such action.

The first issue brought to this court by petitioner is whether the statements he made during his deposition in the civil action could be admitted in the lat-

er criminal trial, where he did not take the stand, without violating his Fifth Amendment privilege against self-incrimination.

Some prior statements of a criminal defendant may be used even though he does not take the stand in his own behalf. His confessions, when shown to have been voluntarily made, are admissible against him even though he does not become a witness, and this does not violate his Fifth Amendment rights. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); United States v. Hughes, 411 F.2d 461, 466 (2nd Cir.), cert. denied, 396 U.S. 867, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969). Likewise, former testimony, voluntarily given in a criminal trial, may be introduced in a later trial upon remand. Edmonds v. United States, 106 U.S.App.D.C. 373, 273 F.2d 108 (1959), cert. denied, 362 U.S. 977, 80 S.Ct. 1062, 4 L.Ed.2d 1012 (1960).

Appellant readily distinguishes these two situations, because in each the defendant is fully aware of the criminal prosecution imminently probable or in progress when he speaks. It is therefore "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Appellant places great emphasis upon the argument that at the time his deposition was taken in the civil case, there was "no reason whatever to apprehend any possibility of incrimination." Therefore, appellant continues, his innocent answering of questions could not have amounted to waiver.

Paragraph II of the complaint in the civil action provided in pertinent part that:

"[D]efendant husband [London] obtained from plaintiff [Geddes] various sums from time to time totaling $740,000. The funds . . . were obtained from plaintiff under a scheme to cheat, defraud and unlawfully deprive plaintiff of her said funds, or were obtained from her in the guise of performing legal services for her and giving her legal advice, all at a time when defendant husband was not licensed to practice law. . . . ."

Under such allegations, assuming the usual state criminal code, London could well have anticipated a possible criminal charge of obtaining money under false pretenses, larceny, criminal fraud or extortion. He was represented by counsel at the deposition where this questioning took place, and appropriate objection could have been made. One being sued civilly for $740,000 upon charges of such a nature, and having retained counsel, could not have been blithely innocent of possible criminal involvement. We cannot view as clearly erroneous the trial court's finding that the appellant gave his testimony in the civil case with realization of the risk involved and of his Fifth Amendment privilege.

Appellant alternatively argues that his deposed testimony was not admissible in the criminal action because an impermissible burden was placed upon him when he was questioned in the civil discovery proceeding. If he failed to answer and defend against the civil action, he stood to have judgment taken against him for $740,000. If he did testify, his answers could be termed voluntary and used against him in a criminal proceeding, even though he would then seek to rely upon his privilege against compulsory self-incrimination.

In support of his theory of an impermissible coercive choice, appellant relies on Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and upon its companion case of Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L. Ed.2d 574 (1967). In the first, police officers who were questioned during a state investigation of traffic-ticket fixing were warned that what they said could be used against them, that they had a privilege to refuse to answer incriminating questions, and that refusal to answer would subject them to possible removal from the force. The police officers answered and their responses were

subsequently used, over objection, in criminal prosecutions for conspiracy to obstruct the administration of traffic laws. The Court held that these statements could not be used, as they were involuntary as a matter of fact and law. That the police officers were put to the "coercive choice," between answering the questions which tended to incriminate them and losing their jobs if they exercised their privilege, vitiated their waiver. The test the Court enunciated was whether the accused "was deprived of his 'free choice to admit, to deny or to refuse to answer.'" 385 U.S. at 496, 87 S.Ct. at 618.

In the companion case of Spevack v. Klein, *supra*, the Court held that a lawyer could not be disbarred because he refused to produce financial records or to testify at a judicial inquiry into his fitness for the practice of law. The threat of disbarment and loss of professional standing, professional reputation and livelihood created an unconstitutional compulsion for the lawyer to give up his Fifth Amendment rights. See Gardner v. Broderick, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

The exact basis for the defendant's contention that his deposition testimony was involuntary is not entirely clear, but the cases relied upon would indicate his argument to be the coercion involved in the choices offered to him: (1) He would testify voluntarily, but run the risk that his answers would be used against him on the basis that he had waived his Fifth Amendment privilege; or (2) He could refuse to answer and run the risk of a large judgment against him because of his refusal. Such coercive alternatives, appellant contends, are constitutionally impermissible.

In United States v. Kordel, 397 U.S. 1, 8–9, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), another alternative was suggested. This was to seek relief by means of a protective order under Fed.R.Civ.P. 30(b), postponing civil discovery until termination of the criminal action. Although

*Kordel* was decided after the deposition and criminal trial here, the protective provisions of Rule 30(b) have been on the books for a long time. *See also* Gordon v. Federal Deposit Ins. Corp., 138 U.S.App.D.C. 308, 427 F.2d 578 (1970); DeVita v. Sills, 422 F.2d 1172 (3rd Cir. 1970); Melson v. Sard, 131 U.S.App.D. C. 102, 402 F.2d 653 (1968).

No effort was made here to obtain relief either at the deposition where appellant was represented by counsel, or at the criminal trial where he was also represented by counsel. In view of our concurrence with the trial court that the deposition testimony was voluntary, and thus, there was no Fifth Amendment violation, it is not necessary to consider the deliberate by-pass issue.

Judgment affirmed.