## No. C-1104

### Lowell Dan Keener v. The People of the State of Colorado

(572 P.2d 463)

Decided November 15, 1977.                    Rehearing denied January 3, 1978.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Gene Beville, Deputy, for petitioner.

J. D. MacFarlane, Attorney General, Stuart A. VanMevern, District Attorney, Loren B. Schall, Assistant, for respondent.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals opinion in this case, 38 Colo. App. 198, 559 P.2d 243. We now affirm the court of appeals affirmance of the defendant's conviction of nonsupport, a

class 5 felony under sections 14-6-101, *et seq.*, C.R.S. 1973.

The decree of February 8, 1977 in a divorce action provided that the defendant should pay $100 a month for the support of his two children. An information was filed in this criminal case on December 27, 1973, charging nonsupport of the children by the defendant during the period of January 4, 1973 through December 13, 1973.

The mother of the children had instituted contempt proceedings in the divorce action for the defendant's nonpayment of child support and attorney's fees. At a hearing held in the contempt matter on April 9, 1974 the defendant testified in his own behalf. During cross-examination at that time he stated that his W-2 form in connection with federal income tax for 1973 showed his income as $8900.

From January 4, 1973 through December 13, 1973 the defendant paid a total of $50 for child support. During the trial, over objection, the court admitted the testimony of the court reporter who acted at the contempt hearing. He related the defendant's testimony at that hearing to the effect that his 1973 W-2 form showed $8900 as income and wages.

I.

We regard the principal assignment of error in the court of appeals ruling to be that the admission of the reporter's testimony violated the defendant's Fifth Amendment privilege against self-incrimination. The defendant has cited authority to the effect that the waiver of privilege in one proceeding does not affect the rights of the accused in another independent proceeding. Among other authorities, the People have cited cases in which the defendant elected to testify in the first trial in which he was charged with a criminal offense, elected not to testify in the second trial of the same offense, and there was admission in the latter trial of his testimony in the first.[1]

We confine ourselves to the situation of the introduction into evidence in a trial for criminal non-support of an admission by the defendant at an earlier hearing in a contempt proceeding. The contempt proceeding was a part of divorce procedures and involved the same alleged failure to support.

In the contempt proceedings, the defendant was represented by counsel. As stated, he testified in his own behalf and on cross-examination gave the testimony concerning his 1973 income. Irrespective of the fact that criminal nonsupport proceedings were then pending against him, his attorney (and in all probability, the defendant himself) was bound to know that his testimony would be incriminating and that he could claim his Fifth Amendment privilege.

---

[1] *Edmonds v. United States*, 273 F.2d 108 (D.C. Cir. 1959); *United States v. Grunewald*, 164 F. Supp. 644 (S.D.N.Y. 1958); *United States v. Yates*, 107 F. Supp. 408 (S.D. Cal. 1952).

In *London v. Patterson*, 463 F.2d 95 (9th Cir. 1972), the complaint in the action against the defendant London alleged that he had obtained $740,000 under a scheme to cheat, defraud and unlawfully deprive the plaintiff of the funds; and that they were obtained from the plaintiff under the guise of performing legal services and giving legal advice, all at a time when the defendant was not licensed to practice law. The court stated:

"Under such allegations, assuming the usual state criminal code, London could well have anticipated a possible criminal charge of obtaining money under false pretenses, larceny, criminal fraud or extortion. He was represented by counsel at the deposition where this questioning took place, and appropriate objection could have been made. One being sued civilly for $740,000 upon charges of such a nature, and having retained counsel, could not have been blithely innocent of possible criminal involvement. We cannot view as clearly erroneous the trial court's finding that the appellant gave his testimony in the civil case with realization of the risk involved and of his Fifth Amendment privilege."

We make the same ruling here.

For cases involving use of an admission made in an earlier civil proceeding as evidence in a criminal case, *see Ayres v. United States*, 193 F.2d 739 (5th Cir. 1952); *Czarlinsky v. United States*, 54 F.2d 889 (10th Cir.), *cert. denied*, 285 U.S. 549, 52 S.Ct. 406, 76 L.Ed. 940 (1931); *Knoell v. United States*, 239 F. 16 (3rd Cir. 1917). *See generally, Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *see also, Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976).

We wish to point out that we are not here concerned with a situation in which a person is virtually coerced into testifying in the former proceeding, as was the case in *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967).

■ In the petition for certiorari the defendant has also presented the argument that there was prosecutorial misconduct in the closing argument of the prosecutor and that the instructions did not adequately define the term "willfully." These issues were passed upon correctly by the court of appeals and we do not discuss them here. Also, there is no merit in the defendant's argument that the evidence was legally insufficient to prove that defendant "willfully" failed to provide support.

Judgment affirmed.

MR. JUSTICE ERICKSON concurs in the result.

MR. JUSTICE CARRIGAN dissents.

MR. CHIEF JUSTICE PRINGLE does not participate.

MR. JUSTICE ERICKSON concurring in the result:

The majority has treated this case as requiring resolution of the broad question of whether "an admission by the defendant at an earlier hearing in a contempt proceeding" is admissible in a subsequent criminal action. The narrow question presented is whether prejudicial error resulted, in a criminal case, from the trial court's admission of the defendant's prior statements regarding the income listed on his 1973 W-2 tax forms.

The result in this case can be traced to the United States Supreme Court's decision in *Garner v. United States*, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976). In *Garner*, the prosecution introduced, over the defendant's objection, the defendant's tax returns in a non-tax case. The Supreme Court held that since the defendant had voluntarily disclosed the information on his tax returns, instead of claiming his privilege against self-incrimination, the admission of the returns against the defendant did not violate his Fifth Amendment privilege because the evidence has not been "compelled" by the government. The Supreme Court stated that:

"The information revealed in the preparation and filing of an income tax return is, for purposes of Fifth Amendment analysis, the testimony of a 'witness'. . . .

. . . .

"In summary, we conclude that since Garner made disclosures instead of claiming the privilege on his tax returns, his disclosures were not compelled incriminations. He therefore was foreclosed from invoking the privilege when such information was later introduced as evidence against him in a criminal prosecution."

*Garner* makes it unnecessary to reach the broader question addressed by the majority opinion. Since objections based on Fifth Amendment grounds could not have succeeded had the tax returns themselves been introduced, no prejudicial error resulted from the introduction of the defendant's statements in this case.

Were it necessary to reach the question decided by the majority opinion, the focus should be on whether the prior statements were made voluntarily. The general rule that the privilege must be asserted to be considered operates unless factors exist which deny the individual a free choice to admit, deny, or refuse to answer. *Garner v. United States, supra.*

Colorado has long recognized that the protection against self-incrimination operates to protect against compulsory (non-voluntary) testimony in proceedings other than criminal trials. *See Early v. People*, 142 Colo. 462, 352 P.2d 112 (1960), *cert. denied*, 364 U.S. 847, 81 S.Ct. 90, 5 L.Ed.2d 70 (1960); *People v. Schneider*, 133 Colo. 173, 292 P.2d 982 (1956); *People v. McPhail*, 118 Colo. 478, 197 P.2d 315 (1948); *People v. Clifford*, 105 Colo. 316, 98 P.2d 272 (1940); *Radinsky v. People*, 66 Colo. 179, 180 P. 88 (1919); *Tuttle v. People*, 33 Colo. 243,

79 P. 1035 (1905). In *Tuttle v. People, supra,* the court declared:

"[T]he important question to determine in cases of this character, is, was the statement voluntary? If this question can be answered in the affirmative, then the statement is clearly admissible on a principle, the soundness of which is not disputed, but if not voluntary or if obtained by any degree of coercion, then it must be rejected. No hard-and-fast-rule can be formulated which would serve as the test in every instance, but each case must be determined upon its own circumstances. The mere fact that an oath is or is not administered cannot, ordinarily, of itself serve as a true test. Some persons might believe that after service of a subpoena and the administration of an oath they would be compelled to answer all questions, while others would not be so influenced. Surrounding circumstances must necessarily, in almost every case, be taken into consideration in determining whether a statement was voluntary or not, and that question ought to be determined from the facts and not by the application of any technical rule. . . ."

Voluntary statements made in prior proceedings are admissible in subsequent criminal proceedings, but, nonetheless, the defendant retains his privilege against self-incrimination. *See* the dissent of Judge Kelly in *People v. Keener,* 38 Colo. App. 198, 559 P.2d 243 (1976), for an excellent analysis of the additional safeguards provided by Article II, Section 12 of the Colorado Constitution.

In *United States v. Miranti,* 253 F.2d 135 (2d Cir. 1958), the court declared:

"[I]t is well established that a waiver of the privilege in one proceeding does not affect the rights of a witness or the accused in another independent proceeding. *In re Neff,* 3 Cir., 206 F.2d 149, 36 A.L.R.2d 1398; *Poretto v. United States,* 5 Cir., 196 F.2d 392; *United States v. Field,* 2 Cir., 193 F.2d 109. See 8 Wigmore on Evidence § 2276 (3d Ed. 1940). This disclosure of information to the FBI (here in the nature of a confession), while admissible as evidence in a subsequent trial of the witness, if voluntarily made, does not constitute a waiver of the witness' privilege against self-incrimination even in response to the same questions before a grand jury. It can be argued that reiteration of the prior voluntary statement is not incriminating because that statement would be admissible against the witness at trial. But reiteration adds to the credibility of the statement, *United States v. Malone,* D.C.N.D.Cal., 111 F.Supp. 37, 39, and if construed as a waiver could lead to additional questions requiring answers which further implicate the witness."

The prior testimony in this case concerned information which the defendant had voluntarily disclosed in his tax returns. Furthermore, the defendant's prior testimony was read by the court reporter. Therefore, the defendant's privilege against self-incrimination was not violated.

I would affirm the judgment on the narrow basis set forth above.


MR. JUSTICE CARRIGAN dissenting:

I respectfully dissent.

As Judge Kelly in her well reasoned and thoroughly researched dissent to the court of appeals opinion has pointed out, the testimony obtained in the "civil" contempt proceeding was compelled. Surely this is the substance of the matter, regardless of the form. Indeed it would be difficult to imagine greater judicial compulsion to testify than is exerted against one charged with contempt. The very atmosphere is coercive; the contemnor is cited with an order to show cause why he should not be held in contempt. Incarceration is the implicit — if not the explicit — penalty should he refuse to testify. Here the usual pressures were intensified by the fact that a criminal non-support action based on the same failure to make payments had already been filed.

In such a situation should not a society which takes pride in the fairness of its judicial procedure require some showing that the defendant-contemnor knows he is not required to give evidence which can be used against him in the criminal non-support case?

Judge Kelly appropriately relies upon the provision of the Colorado Constitution which forbids compelling any person "to testify against himself in a criminal case." *Colo. Const.* Art. II, §18. Due process concepts of fundamental fairness in criminal proceedings would also require either (1) that the record reflect that the defendant-contemnor was warned that his testimony in the contempt hearing could be used against him in the criminal case, or (2) that the prosecution in the criminal case meet its normal burden of showing that the defendant's incriminating statement was voluntarily given after a valid waiver of the privilege. *Colo. Const.* Art. II, § 25.

While failure to support one's children may be a serious crime, it may not be as dangerous to our society in the long run as today's precedent undermining our historic right against self-incrimination.